Sharon Stiller (*pro hac vice*)
**ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN,**
**FORMATTO, FERRARA & WOLF, LLP.**
160 Linden Oaks, Suite E
Rochester, NY 14625
(585) 218-9999
sstiller@abramslaw.com
*Attorney for Defendant Parts Authority*

Michelle R. Matheson #019568
**MATHESON & MATHESON, P.L.C.**
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
**E-Service:** reception@mathesonlegal.com
*Local Counsel for Defendant Parts Authority*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eugene Scalia, Secretary of Labor, United States Department of Labor,<br><br>           Plaintiffs,<br><br>v.<br><br>Arizona Logistics, Inc., d/b/a Diligent Delivery Systems, an Arizona corporation; Parts Authority Arizona LLC, an Arizona limited liability company; and Larry Browne, an individual.<br><br>           Defendants. | Case No.:  2:16-cv-04499-DLR<br><br><br>**DEFENDANT PARTS AUTHORITY'S MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

/ / /

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Parts Authority Arizona, LLC, by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 56, hereby moves for Summary Judgment on Plaintiff's Complaint for violations of the Fair Labor Standards Act ("FLSA").   Parts Authority is not an employer or joint employer of the independent contractor drivers under the FLSA.   Parts Authority also moves for summary judgment on the applicable statute of limitations for FLSA violations, two years, because its conduct was not willful.   And equitable tolling does not apply here. Finally, Parts Authority moves for summary judgment on the issue of liquidated damages available under the FLSA. Parts Authority cannot be held liable for liquidated damages because it had an objective and subjective good faith belief that it was acting in compliance with the statutory requirements.   This motion is supported by the following detailed Memorandum of Points and Authorities, which is specifically incorporated herein.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## <u>INTRODUCTION</u>

Parts Authority Arizona, LLC, ("Parts Authority") is a distributor of automotive replacement parts, tools, equipment and transmissions.  (PASUF ¶ 1)[1].  Parts Authority began business operations in Arizona in 2012 with four locations and rapidly grew to 12 Arizona locations today.  (PASUF ¶ 3).  Along with 14 other businesses, Parts Authority is a customer of Arizona Logistics, Inc., d/b/a Diligent Delivery Systems ("Diligent").  (PASUF ¶¶ 10-11).[2]  The Department of Labor ("DOL"), however, has elected to selectively pursue Parts Authority as the only customer in this litigation, seeking eight-figure penalties for alleged violations of the minimum wage and overtime provisions of the federal Fair Labor Standards Act ("FLSA").  *Id*. (PASUF ¶ 114).

Due to both the seasonal nature of Parts Authority's business and its rapid growth in the Arizona market, it contracted with Diligent to provide delivery drivers to assist with its product distribution to its customers.  (PASUF ¶¶ 3, 6-9, 14-16).  Diligent offered Independent Contractor Drivers ("IC Drivers") assignments with Parts Authority (and its other customers) to supplement Parts Authority's in-house delivery services.  (PASUF ¶¶ 14, 21-22, 44-45).  Notably, Diligent contractually agreed that the drivers it supplied would be independent contractors, and that it would comply with all applicable laws relating to the contractors.  (PASUF ¶¶ 18-19).

For purposes of this litigation, the DOL paints Parts Authority and Diligent together with a broad (and unwarranted) brush.  Diligent demonstrates in its accompanying motion for summary judgment that the IC Drivers are contractors, and that Parts Authority is simply Diligent's customer.[3]  On each issue Diligent raises, Parts Authority's position is

---

[1] PASUF refers to Parts Authority's Statement of Undisputed Facts, filed contemporaneous herewith.

[2] Parts Authority ceased using IC drivers provided by Diligent effective January 2019.  (PASUF ¶ 111).

[3] Parts Authority incorporates by reference the arguments, authorities, and exhibits, from the Separate Statement of Facts and Memoranda concurrently filed by its co-defendants Diligent and Larry Browne. Diligent's Statement of Facts is referenced herein as DSUF and Diligent's Motion for Summary Judgment is referenced as DMSJ.

even stronger because it is one step removed.[4]   For example, Parts Authority never compensated or onboarded the drivers.  (PASUF ¶¶ 67-75).  Like Diligent's 14 other Arizona clients, Parts Authority was simply a recipient of the services for which Diligent contracted with the IC Drivers.  Similarly, if Diligent was not an employer, then there cannot be a joint employer relationship.  It is also important to note that Parts Authority was never asked to enter into a tolling agreement with the DOL.  (PASUF ¶¶ 107-08).  Nor can the DOL demonstrate that Parts Authority misled the IC Drivers in any way about their independent contractor status.  (PASUF ¶¶ 111-112).  Indeed, it was only in March, 2020 that the DOL clarified its joint employer rules, admitting that the prior interpretations "created uncertainty" and "did not adequately explain" the parameters. (See Point II, infra). Thus, there is no basis for equitable tolling of the FLSA's statute of limitations with respect to Parts Authority.

This action was filed on December 21, 2016.  [Docket Entry #1].  Accordingly, even if the DOL was able to show a willful violation, the **maximum** limitations period is December 21, 2013[5] to January 2019, when Parts Authority discontinued using IC drivers; not 2012 to present as asserted by the DOL.  However, as demonstrated herein, there is insufficient evidence that Parts Authority knew or showed reckless disregard regarding whether its conduct violated the FLSA.  Thus, the three-year statute of limitations does not apply and the applicable two-year limitations period is December 21, 2014 to January 2019. The undisputed record before this Court demonstrates that when negotiating its contract with Diligent, Diligent affirmatively represented that the IC drivers were contractors, and provided legal authority supporting the fact that the drivers had been found to be contractors.  (PASUF ¶ 20).  Parts Authority then went further, affirmatively requiring as an essential term in the parties' Master Services Agreement ("MSA") that Diligent provide

---

[4] Diligent contends that the eight interviewed Plaintiffs are not representative of the 1649 Plaintiff Drivers.  Diligent MSJ, pp. 2, 19-20.  They are even less representative of Parts Authority, given that only an average of 58 IC Drivers accepted assignments in connection with 9 Parts Authority locations on any given day.  (PASUF ¶¶ 21-22).

[5] The standard FLSA statute of limitations is two years.  Only in cases where the Plaintiff can establish a willful violation can the limitations period be extended to three years.  29 U.S.C. § 255(a).

4

only contract drivers, and that Diligent comply with all legal requirements it owed to the IC Drivers whether as employees or contractors and without limitation in relation to overtime and minimum wage requirements.   (PASUF ¶¶ 16-19).   Thus, if one was to assume for the sake of argument as DOL contends, that Diligent was a joint employer, Parts Authority also required contractually that Diligent meet its obligations to its IC Drivers. Parts Authority therefore cannot be held liable for liquidated damages under the FLSA because it had an objective and subjective good faith belief that it was acting in compliance with the statutory requirements.

## LEGAL ARGUMENT

### I.   PA is not an "Employer" or "Joint Employer" of the IC Drivers.

Under the FLSA, an "employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee.   29 U.S.C. § 203(d).   Effective March 16, 2020, the DOL promulgated new regulations which codify prior 9th Circuit case law on whether an entity qualifies as an "employer" or "joint employer" of an individual employee.[6]   Whether an entity is a "joint employer" under the FLSA is a question of law that **must** be decided by this Court. *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997) (citing *Bonnette*, 704 F.2d at 1469).   In this case, the binding precedent mandates that Parts Authority is not a "joint employer" as a matter of law.   As such, Parts Authority should be dismissed as a defendant in the action.

---

[6] As a threshold matter, the DOL confirmed that the scenario alleged here--- where "the individual is an employee of one employer whose work for that employer happens to simultaneously benefit another person" – presupposes a primary employer. Joint Employer Status Under the Fair Labor Standards Act, 85 Fed. Reg. 2820, 2827 (Jan 16, 2020) (to be codified at 29 C.F.R. § 791.2).   Specifically, to fall within this scenario, there must "unquestionably [be] an employee employed by an employer, and the issue is whether another person [here Parts Authority] is an employer as well."  Id.  Thus, if this Court finds that there was no primary employer of the drivers because they were independent contractors and not "employees" of Diligent, then this Court need look no further into the "joint employer" scenario and summary judgment for all defendants is appropriate.

The DOL's recent guidance identifies the four factors relevant to the determination of employer or joint employer status.  These are whether the person:

(i)  Hires or fires the employee;

(ii)  Supervises and controls the employee's work schedule or conditions of employment to a substantial degree;

(iii)  Determines the employee's rate and method of payment; and

(iv)  Maintains the employee's employment records."

*See* 29 C.F.R. § 791.2(a)(1).  The DOL confirmed that this analysis codifies the four factors outlined in longstanding 9th Circuit precedent.  85 Fed. Reg. 2820, at 2830 ("the Department adopts the proposed four-factor balancing test, derived from *Bonnette* and supported by other case law, as the test for analyzing joint employer status under this scenario") (citing *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).  As a result, case law applying the *Bonnette* factors is binding precedent in this dispute.

The DOL also went two steps further in clarifying the "joint employer" definition.  First, it found that "[t]he potential joint employer must *actually exercise*--directly or indirectly--one or more of these indicia of control to be jointly liable under the Act."  29 C.F.R. § 791.2(a)(3) (italics added); *see also* 85 Fed. Reg. 2820, at 2830.  Thus it explained that "the potential joint employer's contractual agreements with the employer requiring the employer to comply with specific legal obligations or to meet certain standards to protect the health or safety of its employees or the public *do not* make joint employer status more or less likely under the Act."  29 C.F.R. § 791.2(a)(2) (emphasis supplied).  These include "requiring background checks; or requiring employers to establish workplace safety practices and protocols or to provide workers training regarding matters such as health, safety, or legal compliance."  29 C.F.R. § 791.2(a)(2).

Second, the DOL clarified that *secondary* factors previously recognized in *Torres-Lopez. v. May* are no longer relevant.[7]  Specifically, the revised regulations provide:

> Whether the employee is economically dependent on the potential joint employer is **not** relevant for determining the potential joint employer's liability under the Act.  Accordingly, to determine joint employer status, these factors should not be used to assess economic dependence. Examples of factors that are **not relevant** because they assess economic dependence include, but are not limited to:
>
> (1)  Whether the employee is in a specialty job or a job that otherwise requires special skill, initiative, judgment, or foresight;
> (2)  Whether the employee has the opportunity for profit or loss based on his or her managerial skill;
> (3)  Whether the employee invests in equipment or materials required for work or the employment of helpers; and
> (4)  The number of contractual relationships, other than with the employer, that the potential joint employer has entered into to receive similar services.

29 C.F.R. § 791.2(c) (emphasis added).

Thus, this Court's analysis of joint employer status must be limited to the four *Bonnette* factors now codified in the DOL's March 2020 rule.

### A.        Factor #1: Parts Authority Did Not Hire and Fire the IC Drivers.

The present case is factually similar to the work relationship reviewed by Judge McNamee in *Montoya v. 3PD*.  In that case*,* Home Depot contracted with 3PD for 3PD to provide truck drivers to deliver Home Depot's goods.  *Montoya v. 3PD, Inc.*, 2014 U.S. Dist. LEXIS 93806, at **3-4 (D. Ariz. July 9, 2014).  3PD then contracted with drivers to make the deliveries.  *Id.*  A delivery driver, Dennis Montoya, contracted with 3PD.  *Id.* at *3.  Montoya claimed Home Depot was his joint employer.   *Id.*  As to the first factor, Home Depot did not interview, evaluate, or hire any 3PD applicants.  *Id.* at *9.  Montoya never sent Home Depot an application packet or  resume.  *Id.* at **10-11.  This weighed against joint employment.  *Id.* at **9-12.

*Montoya* is squarely on point.  Similar to Home Depot, Parts Authority has no involvement in the IC Driver contracting process.  (PASUF ¶¶ 23-28).  Like the driver in

---

[7] *Torres-Lopez. v. May*, 111 F.3d 633, 638 (9th Cir. 1997).

*Montoya*, the IC Drivers do not apply to or contract with Parts Authority.  (PASUF ¶¶ 28, 30).  Rather, Diligent advertises driver positions, meets with drivers prior to contracting, enters into Owner-Operator Agreements with drivers, and has a checklist of the paperwork needed from contracting drivers.  (PASUF ¶¶ 23-27).  Parts Authority receives no new hire records or paperwork from IC Drivers.  (PASUF ¶¶ 30, 70, 75, 79-80, 83).  Contract drivers are provided possible assignments by Diligent on the day of a requested engagement, which is the first time Parts Authority is in contact with a driver.  (PASUF ¶¶ 25, 44-46, 49).  Cases with analogous facts make clear that Parts Authority has no hiring power in this scenario.  *See Johnson v. Serenity Transp., Inc.*, 2017 U.S. Dist. LEXIS 57650 (N.D. Cal. Apr. 14, 2017) at **15, 45 (contractors SCI and the County, as opposed to Serenity, did not post driver jobs, review resumes or applications, or interview candidates, and were not involved in drafting, approving, or executing contracts between Serenity and the drivers); *Molina v. Hentech, LLC*, 2015 U.S. Dist. LEXIS 33529, at *17 (M.D. Fla. Mar. 18, 2015) (plaintiff drivers received hiring paperwork from Hentech and were hired by Hentech; not DTAG).[8]  Both the IC Drivers and Diligent confirm in their agreement that they are contractors,  and the MSA between Diligent and Parts Authority places the onus on Diligent, not Parts Authority, to contract with and supply IC Drivers.  (PASUF ¶¶ 15-16).  But even if that was not the case and there was a primary employer (which here there is not since Diligent is also not an employer), the authorities confirm that a primary party having hiring and firing authority does not equal such authority on behalf of a third-party like Parts Authority.  *See Adams v. US Airways, Inc.*, 2013 U.S. Dist. LEXIS 46790, at **8-9 (D. Ariz. Mar. 29, 2013) (the contract between ISS and US Airways made it clear that ISS, not US Airways, had the hiring and firing power); *Artis v. Asberry*, No. G-10-323, 2012 U.S. Dist. LEXIS 149410, at **6-9 (S.D. Tex. Oct. 16, 2012) (where AMR contracted with transportation service providers, who hired drivers, to transport patients, the subcontract granted hiring and firing authority to the subcontractors, not AMR); *Lesnik*

---

[8] Parts Authority did not even perform background checks like other companies found not to be joint employers.  (PASUF ¶ 97).  *E.g. Johnson*, 2017 U.S. Dist. LEXIS 57650, at **2-6.

*v. Se*, 374 F. Supp. 3d 923, 942 (N.D. Cal. 2019) (where defendant contracted with a third party to provide workers the defendant did not have hiring and firing power).

PA also had no authority to, and did not, hire and fire the IC Drivers.  (PASUF ¶¶ 23-28, 30, 61-64).  In *Montoya*, 3PD terminated Montoya after Home Depot told 3PD that Home Depot "would be better served with a new Contractor." *Montoya*, 2014 U.S. Dist. LEXIS 93806, at *11.  Montoya argued this meant Home Depot had firing power.  *Id.* at **9-11.  This Court disagreed, finding that Home Depot did not determine whether 3PD could continue employing Montoya for other clients' deliveries.  *Id.* at **11-12.

Similarly in *Johnson,* plaintiffs were mortuary drivers for Serenity.  *Johnson*, 2017 U.S. Dist. LEXIS 57650, at **2-6.  Serenity contracted with a funeral home operator, SCI, and Santa Clara County (the "County") for Serenity's drivers to transport decedents.  *Id.*  While SCI and the County could remove a Serenity driver from their rotation, the court found an entity's right to remove particular workers from its rotation is not the same as power to fire a worker where the worker could still work for Serenity, just for another client.  *Id.* at **16, 18-21, 48-49.  Even though Serenity actually terminated a driver for violating an SCI policy, Serenity, not SCI, terminated the driver.  *Id.* at **17-18.  *See also Adams*, 2013 U.S. Dist. LEXIS 46790, at *5-10 (Even though the skycaps only provided services to US Airways, a US Airways supervisor threatening that an individual would no longer be able to provide services to US Airways did not equate to the ability to fire).

The joint employer argument in this case is even stronger than the factual record in *Montoya* and *Johnson*.  Only Diligent had the power to terminate an Owner-Operator Agreement.  (PASUF ¶¶ 61-64).  Parts Authority also did not discipline IC Drivers.  (PASUF ¶ 61-64).  Similar to Home Depot and SCI, Parts Authority retains the power to request replacement of Diligent drivers if, for example, a driver does not pick up a delivery.  (PASUF ¶¶ 62, 64-65). However, Diligent remains free to assign that driver to any of its 14 other clients or other Parts Authority locations; make that driver a backup driver; or send the driver back the next day.  (PASUF ¶¶ 62, 64-65). Diligent representatives and the IC drivers deposed in this case testified that drivers were moved between multiple Diligent

clients and/or multiple Parts Authority locations.   (PASUF ¶¶ 65-66).  At most, Parts Authority could request that Diligent provide an alternative driver but this did not impact the driver's status with Diligent.  (PASUF ¶¶ 62-66).  None of the drivers testified that Parts Authority had ever hired or terminated an IC Driver.  *E.g.* (PASUF ¶¶ 24-25, 27-28, 30, 62-66).   Under well-established precedent in this District and the Ninth Circuit, Parts Authority's occasional requests for replacements is not equivalent to firing power under the first factor, and it is undisputed that the first factor has not been met.

## B. Factor #2: Parts Authority did not Supervise or Control Drivers' Work Schedules, or which IC Driver or subcontractor drove.

Precedent from this District and the Ninth Circuit demonstrate that Parts Authority did not exercise the requisite degree of supervision or control to establish this second factor in the balancing test.  For example, in *Montoya*, Home Depot required a certain number of delivery hours from 3PD, who in turn assigned those hours to drivers.  *Montoya,* 2014 U.S. Dist. LEXIS 93806, at **14-15.  However, Home Depot did not determine the hours that Montoya would work as a driver for 3PD (as opposed to the total amount of driver hours it needed).  *Id.*  This fact weighed against a finding of joint employment.  *Id.*

Similarly in *Johnson*, while SCI and the County had certain coverage and hour requirements, Serenity was the party responsible for staffing and dispatching its drivers, which weighed against a joint employment relationship.  *Johnson*, 2017 U.S. Dist. LEXIS 57650, at **21-23, 51-52.   *See also Molina*, 2015 U.S. Dist. LEXIS 33529, at **17-18 (even though amount of work drivers performed was based on DTAG's needs on particular days, subcontractor Hentech controlled the amount of work each driver performed by controlling number of drivers it hired and scheduled to work each day).

This case cannot be factually distinguished from *Montoya* and *Johnson*.  Like the hour requirements in those cases, Parts Authority contracted for a set number of driver hours per week, which varied based on seasonal and other business needs.  (PASUF ¶¶ 34-36, 7, 21).  There is no evidence, however, that Parts Authority required a specific driver

or even the same driver perform those work hours.  (PASUF ¶¶ 35, 37-39, 44-45).  Even the number of drivers requested by Parts Authority varied.  (PASUF ¶¶ 7, 21). Likewise, Parts Authority did not control the drivers' schedules.  (PASUF ¶¶ 34-35, 37-38, 26, 57). Rather, drivers set their own hours via their ability to accept or decline an engagement, and Parts Authority did not approve time off requests. (PASUF ¶¶ 26, 59-60, 96). IC Drivers not only were permitted to subcontract under their contract with Diligent, but some of those deposed, testified that they did so. (PASUF ¶¶ 57-58).  Indeed, the contract executed by IC Drivers specifically represents that the driver had the right to "control and determine all matters related to the performance of an engagement," including "the time of performance or the time or hours during which an opportunity is to be performed."  (PASUF ¶ 26). Thus, the evidence before this Court demonstrates that the IC drivers in this case had even greater control over their schedules than the drivers in *Johnson*.  Here, the IC drivers could and did sub-contract with other drivers to cover full or half days of work and some drivers worked on Saturdays only or declined Saturday engagements.  (PASUF ¶¶ 57-58).  Other IC drivers worked only as backup drivers who work as needed.  (PASUF ¶¶ 40, 64).

There is also no evidence that Parts Authority trained IC Drivers.  (PASUF ¶ 42). Rather, IC drivers shadowed other IC Drivers.  (PASUF ¶ 42). Parts Authority did not instruct the drivers how to perform their engagement, and suggesting the order of deliveries is not enough alone to satisfy this factor and does not constitute instruction or training. (PASUF ¶¶ 42-43, 50, 91); *Dalton v. Omnicare, Inc.*, 138 F. Supp. 3d 709, 713, 718 (N.D.W. Va. 2015).  If a driver accepts a Diligent engagement for the day at a Parts Authority location, the driver simply arrives at Parts Authority and writes his or her name on a white board and awaits a delivery.  (PASUF ¶ 49). Like the "deliveries coordinator" in *Montoya*, a Parts Authority dispatcher creates delivery routes based on real-time Parts Authority orders and assigns the driver and invoice with the parts to be delivered.  (PASUF, ¶¶ 50-52). Once an order is out for delivery, the IC Drivers operated independently without supervision. (PASUF, ¶¶ 53-56).  In fact, the only evidence of any driver instruction by Parts Authority was limited to a few minutes when a driver was first assigned to a particular

location and a short memo that is nothing more than macro-level goals, which none of the IC Drivers testified to receiving or reviewing.  (PASUF ¶¶ 31-32).  However, this *de minimis* involvement with ministerial matters and offering general customer expectations does not constitute control or supervision.  *See Montoya,* 2014 U.S. Dist. LEXIS 93806, at *14; *Artis,* 2012 U.S. Dist. LEXIS 149410, at **16-18 (S.D. Tex. Oct. 16, 2012).

Delivery driver cases outside our Circuit have reached the same conclusion.  In *Layton v. DHL Express,* the Eleventh Circuit declined to find joint employment in a similar context.  There, DHL, an international shipping company, contracted with Sky Land to provide delivery drivers to deliver DHL's packages.  *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1173 (11th Cir. 2012).  DHL dictated what time the packages were available for pick-up each morning, and occasionally had erratic pick-up orders to which drivers had to respond. *Id.* at 1178.  The court of appeals found that while DHL required its packages be delivered on time, Sky Land and the drivers were tasked with how to accomplish this objective, and DHL did not involve itself with the specifics of how those macro-level goals would be reached, which supported finding no joint employment.  *Id.*  The court reached this conclusion even though there was evidence in the record that DHL supervised the drivers during loading and in non-routine situations, because the drivers were not supervised during the majority of their days when performing deliveries away from DHL facilities.  *Id.* at 1179.  *See also Molina*, 2015 U.S. Dist. LEXIS 33529, at **14-16 (DTAG did not exert the kind of supervision required for joint employment where the amount of calls and instruction given to drivers directly from DTAG, as opposed to Hentech, were too infrequent); *Rios v. Airborne Express Inc.*, 2006 U.S. Dist. LEXIS 54570, at *10 (N.D. Cal. July 24, 2006) (where the cartage agreement between a shipping company and its couriers did not grant the shipping company control over courier employees, or the authority to hire and fire them, or pay them, shipping company was not a joint employer).  An analysis of the basis for DOL's claim of supervision confirms that proof of this factor, too, is lacking.

### C. Factor #3: Parts Authority Did Not Determine Drivers' Rate and Method of Payment.

Pursuant to the MSA, Parts Authority paid Diligent a flat rate for services.  (PASUF ¶ 33). The MSA does not mandate or even mention what Diligent would in turn pay the IC drivers.  (PASUF ¶ 69).  Diligent negotiated independently with the IC Drivers and paid them a daily rate.  (PASUF ¶¶ 23-27, 71-73).  Diligent carved out a profit margin and reimbursement for its administrative costs but did not share this proprietary information with Parts Authority.  (PASUF ¶¶ 71-74). There is no evidence in the record that Parts Authority knew the rate Diligent paid its drivers.  (PASUF ¶¶ 67-68, 72-74).  And Parts Authority had no involvement in actually preparing or processing drivers' paychecks.  (PASUF ¶¶ 67-70, 81-83).  Indeed, Parts Authority could not have participated in the preparation or payment of drivers' paychecks because it did not have access to the drivers' address or the tax forms necessary to process payments, and did not know what arrangements Diligent and the IC Drivers had made relating to compensation.  Id.  Parts Authority's *only* knowledge of the IC drivers pay was the date of the payments because Parts Authority allowed Diligent to distribute paychecks at Parts Authority locations. Id.

This factor unquestionably weighs against joint employment.  In *Montoya*, Home Depot did not pay Montoya, did not determine his pay, bonuses, or benefits, and did not pay payroll taxes or issue tax forms for him.  *Montoya,* 2014 U.S. Dist. LEXIS 93806, at *17.  Rather, Montoya's pay was dictated by 3PD.  *Id.*  Similarly in *Johnson*, while the SCI-Serenity and County-Serenity contracts provided that SCI and the County would pay Serenity a flat fee per removal, *Serenity* determined how much it paid its removal technicians, paying them a different flat fee per removal.  *Johnson*, 2017 U.S. Dist. LEXIS 57650, at **29-30.  Although Serenity's owner once notified drivers that any reduction in the amount SCI paid Serenity may reduce their pay, that decision rested solely within Serenity's discretion.  *Id.* at *30.  Either way, it was undisputed that SCI and the County paid Serenity; not the removal technicians themselves. *Id.* at **29-30, 55-56.  This was distinguishable from cases where the contract at issue (between the contractor and

subcontractor) actually supplied the pay rates for the delivery drivers. *Id.* at **30-32; *see also Artis*, 2012 U.S. Dist. LEXIS 149410, at **19-20 (AMR paid the subcontractors at flat rates per trip, and the subcontractors then compensated their drivers, and AMR was not even aware of what subcontractors paid the drivers); *Layton*, 686 F.3d at 1179 (DHL had no power to set Drivers' pay rates or payment methods; Sky Land alone had this ability); *Lesnik*, 374 F. Supp. 3d at 944 ("Even if the workers received a cut of Eisenmann's payments to Vuzem, courts have held that such facts do not establish a joint employer relationship").

### D. Factor #4: Parts Authority Did Not Maintain Drivers' Employment Records.

The new regulations make it clear that Parts Authority does not meet this factor. Specifically:

> "employment records" means records, such as payroll records, that reflect, relate to, or otherwise record information pertaining to the hiring or firing, supervision and control of the work schedules or conditions of employment, or determining the rate and method of payment of the employee. Except to the extent they reflect, relate to, or otherwise record that information, **records maintained by the potential joint employer related to the employer's compliance with the contractual agreements identified in paragraphs (d)(3) and (4) of this section do not make joint employer status more or less likely under the Act** and are not considered employment records under this section. **Satisfaction of the maintenance of employment records factor alone will not lead to a finding of joint employer status**.

29 C.F.R. § 791.2(a)(2) (emphasis supplied).

Parts Authority did not maintain any of these records. It did not maintain records of IC Drivers' time or hours. (PASUF ¶¶ 75-80). Parts Authority maintained no personnel, payroll, discipline, or background information from the drivers other than their cell-phone number. (PASUF ¶¶ 75-83). Parts Authority did not obtain or maintain paperwork demonstrating that the drivers were properly licensed and insured. (PASUF ¶¶ 27, 75-78, 83). Diligent, on the other hand, kept a roster of drivers' engagements by customer name and date. (PASUF ¶¶ 40, 81-83). Diligent used the roster to generate bills for its clients,

including Parts Authority.  Id. Diligent also maintained a spreadsheet which tracked driver pay rates, attendance, profit margins, percentage of days worked, and fees.  Id.  Diligent did not provide this spreadsheet to Parts Authority.  (PASUF ¶ 80).  These undisputed facts clearly do not satisfy the fourth factor of the joint employment test.  *See, e.g., Montoya,* 2014 U.S. Dist. LEXIS 93806, at *20; *Adams*, 2013 U.S. Dist. LEXIS 46790, at *4; *Lesnik*, 374 F. Supp. 3d at 946.

Plaintiff's inability to demonstrate that it has met even one, let alone all, of the newly codified *Bonnette* factors demonstrates that the Complaint must be dismissed as against Parts Authority.  *E.g. Valencia v. North Star Gas Ltd. Co*., 291 F. Supp. 3d 1155 (S.D.  Cal. 2018) (dismissing Complaint for failure of Plaintiff propane delivery drives to demonstrate *Bonnette* factors).

## II.   THE UNSETTLED STATUS OF THE LAW SHOULD BE CONSIDERED WHEN EVALUATING THE DOL'S CLAIMS FOR LIQUIDATED DAMAGES AND PARTS AUTHORITY'S ALLEGED WILLFUL VIOLATION OF THE STATUTE.

When a worker's status (as independent contractors or employee) under the law is unsettled, this is relevant not only to summary judgment on the issue of classification of the worker, but also to the issue of willfulness and liquidated damages in an FLSA action. The DOL alleges that the Defendants are individually and jointly liable, because they acted as "agents for one another, controlled the material aspects of the employment relationship with Driver Employees including: hiring, firing, setting work schedules, assigning work, assigning Driver Employees to work locations, and preparing and maintaining pay records."   Complaint ¶¶ 13, 17; Amended Complaint ¶¶ 17, 18 and 21.  In short, the DOL alleges that they are "joint employers," and that the workers are employees of the Defendants, not contractors to any.

However, during the time period at issue in this litigation, both issues – the status of delivery workers and joint employment -- were in flux.  This issue was only recently

clarified by the DOL in its March 16, 2020 interpretation of joint employer status under the FLSA.  29 C.F.R. § 791.

Notably, the DOL explained its rationale for the new rule as follows:

**Q. Why is the Department revising this regulation now?**
The Department has not meaningfully revised this regulation since its promulgation over 60 years ago. Under the current regulation in part 791, multiple persons can be joint employers of an employee if they are "not completely disassociated" with respect to the employment of the employee. However, part 791 **does not adequately explain** what it means to be "not completely disassociated" in those situations where an employee performs work for an employer, and that work simultaneously benefits another person . . . .
The current regulation **may also create uncertainty** over what business practices result in liability as a joint employer, potentially impacting the willingness of organizations to engage in any number of business practices vis-à-vis another entity—such as contracting with a staffing agency . . . The proposed rule explains that these and certain other business practices do not make joint liability more or less likely under the Act, thereby promoting fairness, certainty, and innovation in business relationships.

Moreover, the current **regulation does not clearly identify the statutory basis** for joint employer status. This proposal explains that FLSA section 3(d) determines joint employer status, which will help to ensure that the Department's joint employer guidance is fully consistent with the text of the FLSA.

U.S. DOL FAQ, available at https://www.dol.gov/agencies/whd/flsa/2019-joint-employment/faq#4 (emphasis supplied).  Thus, as Plaintiff itself has recognized, the law of joint employment was, during the time frame in question, uncertain and unclear.

One of the DOL's examples in support of the new rule demonstrates that the relationship between Diligent's contractors and Parts Authority would not constitute joint employment:

**Example:** An office park company hires a janitorial services company to clean the office park building after hours. According to a contractual agreement with the office park and the janitorial company, the office park

agrees to pay the janitorial company a fixed fee for these services and reserves the right to supervise the janitorial employees in their performance of those cleaning services. However, office park personnel do not set the janitorial employees' pay rates or individual schedules and do not in fact supervise the workers' performance of their work in any way. Is the office park a joint employer of the janitorial employees?

**Application:** Under these facts, the office park is not a joint employer of the janitorial employees because it does not hire or fire the employees, determine their rate or method of payment, or exercise control over their conditions of employment. The office park's reserved contractual right to control the employee's conditions of employment does not demonstrate that it is a joint employer.

29 C.F.R. § 791.2(g)(3).

Equally relevant, the National Labor Relations Board, another federal agency charged with protecting the right of private sector employees to improve wages and working conditions, determined that drivers in similar situations are contractors, not employees. On April 16, 2019, the National Labor Relations Board Office of General Counsel took the position that drivers providing personal transportation services were independent contractors and were therefore unable to unionize. *See* Advice Memorandum 4/16/2019 Uber Technologies, Inc., Cases (the "Uber cases"), 13-CA-163062, 14-CA-158833, and 29 CA-177483, available at https://www.nlrb.gov/guidance/memos-research/advice-memos.[9]  The Government cited to and relied on *Fed Ex Home Delivery v. NLRB*, holding that delivery drivers who worked for Federal Express were also contractors. *Id.* (citing *Fed Ex Home Delivery v. NLRB*, 563 F.3d 492, 497 n. 3 (D.C. Cir. 2009). The DOL recognized that there are delivery drivers who meet the contractor standard. "In short, while the FLSA has a very broad scope of coverage, it is not so broad that all workers are caught within its reach—far from it." *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947); *cf. Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134,

---

[9]    The General Counsel found that the common-law agency test was determinative of the issue of independent contractor status. In this case, while giving lip service to the "economic realities", the DOL pleads the same type of agency analyzed in the Uber cases.

1142 (2018) (noting "the flawed premise that the FLSA pursues its remedial purpose at all costs")(internal quotation marks omitted). "Recognizing this limitation on coverage protects the freedom of workers to operate as independent contractors and remain outside the FLSA's scope."  US DOL, Wage and Hour Division, Opinion Letter FLSA 2019-6 (April 29, 2019), available at https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/-2019_04_29_06_FLSA.pdf.  *See also SuperShuttle DFW, Inc.*, 367 NLRB No. 75 (January 25, 2019) (overruling Fed Ex, in part, and holding that franchisees operating shared-ride vans for SuperShuttle were contractors).

DOL's own recognition of the uncertainties and lack of prior definitive guidance are powerful evidence that the DOL cannot show that Parts Authority was willful or failed to act in good faith by hiring Diligent to provide independent contractor delivery services. Indeed, there are private arbitration awards in which IC Drivers have been found to be contractors to both Diligent and Parts Authority.  (PASUF ¶¶ 20, 109).

Moreover, courts around the country have refused to order liquidated damages or find willfulness in factually similar driver settings, where the alleged employer had a good faith belief that the individuals were not employees.  *Powell v. Carey Int'l, Inc.*, 483 F. Supp. 2d 1168, 1176 (S.D. Fla. 2007) (granting summary judgment for Defendants where Defendants offered substantial factual support indicating that they did not pay overtime wages to the chauffeurs based on a good faith belief, and advice of counsel, that they were independent contractors); *Estorga v. Santa Clara Valley Transp. Auth.*, 2019 U.S. Dist. LEXIS 1918, at *52-60 (N.D. Cal. Jan. 4, 2019) (court granted Defendant's motion for summary judgment, noting that a "good-faith but incorrect assumption" that Defendant's pay practices of its delivery drivers complied with the FLSA, did not warrant liquidated damages or a finding of willfulness); *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1243 (11th Cir. 2013) (Where the delivery drivers were improperly classified as independent contractors, the court confirmed the district court's exercise of discretion in denying liquidated damages).

This is not a case where Parts Authority intentionally or with reckless disregard misclassified the drivers to avoid the reach of the FLSA. To the contrary, Parts Authority contracted with a nationwide transportation and logistics service provider which provided similar services to numerous other clients in the same or similar industry. (Diligent MSJ, pp. 3-4, 8-10). In its MSA with Parts Authority, Diligent affirmatively represented that the drivers provided to Parts Authority were independent contractors. (PASUF ¶¶ 16-18). Parts Authority did not hire the drivers, it had no authority to fire the drivers, it did not keep records relating to the drivers, it did not set the drivers' rates of pay, and it did not pay the drivers. *See* (PASUF ¶¶15-18, 27-28, 30, 62-83). Applying these undisputed facts to the unsettled nature of the law on joint employment – particularly in the context of delivery drivers -- this Court should find as a matter of law that Parts Authority did not engage in willful conduct. Rather, Parts Authority made its staffing determinations in good faith reliance on representations from Diligent's counsel and the contractual representations from Diligent in the MSA. (PASUF ¶¶ 16-20); (DSUF ¶¶ 108-116). As a result, only a two-year statute of limitations should apply and liquidated damages should not be awarded as a matter of law, even if the IC Drivers were found to be employees and not contractors of Parts Authority.

### III.   THE DOL HAS NOT MET ITS BURDEN OF SHOWING BAD FAITH; THEREFORE A TWO-YEAR STATUTE OF LIMITATIONS APPLIES.

Though the FLSA employs a two-tiered statute of limitations, claims are ordinarily subject to the two-year statute of limitations. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 135 (1988). The three-year statute of limitations is an **exception** to the two-year statute, and a party claiming the exception carries the burden to show the violation was willful. 29 U.S.C. § 255(a); *McLaughlin*, 486 U.S. at 133, 135; *Nelson v. Waste Management of Alameda Cty., Inc.*, 33 Fed. Appx. 273 (9th Circ. 2002) (bold and emphasis added). To meet the willfulness standard, the Supreme Court requires that a claimant show that the employer either knew or showed reckless disregard as to whether its conduct was

prohibited by the FLSA. *McLaughlin*, 486 U.S. at 133. An employer's negligence is not sufficient; instead, there must be evidence that the employer affirmatively knew it was violating the FLSA or that it was acting with reckless disregard of the FLSA. *Id.*; *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016).

The central legal issue in this case -- joint employment status of contract delivery drivers -- was unsettled until the DOL's final rule in March of this year.  Thus, Parts Authority obtained and relied upon representations from Diligent and its legal counsel that the drivers Diligent supplied were independent contractors and that the Diligent business model was compliant with the FLSA. (PASUF ¶¶ 16-20).  On this factual record, the DOL cannot establish that Parts Authority's conduct was willful.  *See e.g., Dacar v. Saybolt, L.P.*, 907 F.3d 215 (5th Cir. 2018), *republished* at 914 F.3d 917, amended on denial of rehearing (declining to find willful violation where relevant legal issue was unsettled); *Steele*, 826 F.3d at 248 (Plaintiffs failed to meet their burden of showing willfulness by only showing that Defendant failed to follow an interlocutory court order); *Roces v. Reno Housing Auth.*, 300 F. Supp. 3d 1172 (D. Nev. 2018); *Calderon v. GEICO General Ins. Co.*, 809 F.3d 111 (4th Cir. 2015) (not willful where question of exemption was a close and complex one); *Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62 (2d Cir. 2014) (Employer's mistaken classification of employee as exempt from overtime pay requirements was not willful); *Pignataro v. Port Authority of New York and New Jersey*, 593 F.3d 265 (3d Cir. 2010) (Classifying pilots as professional was reasonable given legal authority for that classification, despite being ultimately rejected); *Service Employees Intern. Union, Local 102 v. Cty. Of San Diego*, 60 F.3d 1346 (9th Cir. 1994); *Andersen v. DIRECTV Inc.,* 2017 U.S. Dist. LEXIS 215955, at **24-26 (D. Ariz. July 26, 2017) (Plaintiffs did not supply any evidence creating a dispute of material fact regarding DIRECTV's willfulness); *Valentine v. Sacramento Metro. Fire Dist.*, 2019 U.S. Dist. LEXIS 25362, at **8-9 (E.D. Cal. Feb. 15, 2019) (the uncertainty of the law with respect to whether payments were proper under the FLSA brought into question whether defendant

acted in willful violation, because defendant may not have been "on notice of its FLSA requirement" at the time the violation occurred).

The court may not "presume that conduct was willful in the absence of evidence." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908-909 (9th Cir. 2003).   Plaintiff's Complaint makes only conclusory allegations of willfulness, (Compl., ¶¶ 20-23), which are insufficient to extend the statute of limitations.   Indeed, the evidence in this case is markedly different than other matters litigated by the DOL in our District.   For example, in *Acosta v. TBG Logistics LLC*, the DOL did establish a willful violation by the employer. *Acosta v. TBG Logistics LLC*, 2018 WL 3145938, at **3, 9, 14 (D. Ariz. June 27, 2018), *aff'd Scalia v. Emplr. Sols. Staffing Grp.*, LLC 951 F.3d 1097 (9th Cir. 2020).   In that case the employer, a staffing company, had knowingly overridden the safety nets built into its own payroll system in order to avoid paying premium overtime compensation. *Id.* at **4-5, 9-11, 14.   Here, in marked contrast, the drivers contracted with Diligent as the sole payor. (PASUF ¶¶ 16-18, 26-28, 67-74, 81-83).   All payments were processed by Diligent and Parts Authority had no knowledge of the driver's gross wages or net profit.   Id.

Moreover, on or about July 7, 2011, when negotiating an addendum to the MSA, Diligent and its counsel represented to Parts Authority that its independent contractor model had been challenged in the court system and upheld.  (PASUF ¶ 20).   While the DOL may object that Parts Authority chose to rely on this representation by Diligent's counsel, the "failure to seek legal advice, alone, without prior notice of the alleged FLSA violation does not prove willfulness." *Mohammadi v. Nwabuisi*, 171 F.Supp.3d 545, 550 (W.D. Tex. 2016), *aff'd*, 673 Fed.Appx. 443 (5th Cir. 2017).

## IV.   PARTS AUTHORITY HAS ESTABLISHED A GOOD FAITH DEFENSE TO LIQUIDATED DAMAGES.

The FLSA provides defendants an affirmative defense to liquidated damages. Specifically:

[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds

1    for believing that his act or omission was not a violation of the [FLSA], the court

2    may, in its sound discretion, award no liquidated damages or award any amount

     thereof not to exceed the amount specified in section 216 of this title.

3

4    *See* 29 U.S.C. § 260.

5         According to the 9th Circuit, "[l]iquidated damages are no longer automatic." *Local*

6    *246 Utility Workers Union of America v. Southern California Edison Co.*, 83 F.3d 292, 297

7    (9th Cir. 1996).  The employer's burden is to establish that it had "an honest intention to

8    ascertain and follow the dictates of the Act" and that it had "reasonable grounds for

9    believing that [its] conduct complie[d] with the Act." *Marshall v. Brunner,* 668 F.2d 748,

10   753 (3rd Cir. 1982); *see also Brock v. Shirk,* 833 F.2d 1326, 1330 (9th Cir.1987), *vacated*

11   *on other grounds sub nom., Shirk v. McLaughlin,* 488 U.S. 806 (1988).  If the employer

12   carries its burden, then the court may award no liquidated damages or award any amount

13   not to exceed the amount specified in section 16 of the Act, in its discretion.  As indicated

14   in the statutory text above, the issue of good faith is for the court, not a jury, to resolve.

15   *See also Reich v. Tiller Helicopter Services, Inc.*, 8 F.3d 1018 (5th Cir. 1993).

16        The DOL inappropriately seeks to impose liability upon Parts Authority for

17   following the industry standard for auto parts delivery.  *See e.g., Bennett v. SLT/TAG Inc.*,

18   2003 U.S. Dist. LEXIS 25438, at *26-28 (D. Or. Feb. 10, 2003) (court denied Plaintiff's

19   motion for summary judgment on liquidated damages where Defendant relied on industry

20   standard to classify employees as exempt from the FLSA).  In addition, Parts Authority

21   acted in subjective and objective good faith by requiring Diligent to memorialize its

22   representations regarding the legality of its business model in the MSA and requiring it to

23   make any payment which may be appropriate, regardless of its representations.  *See Baker*

24   *v. Delta Air Lines*, 6 F.3d 632, 645 (9th Cir. 1993) (employer's reliance on legal advice

25   evidence of a good faith attempt to comply with the law).

26        This case is the unusual case, in which Parts Authority took significant steps and

27   has affirmatively shown that liquidated damages should not be awarded  *See, e.g., Radford*

28   *v. Berg Homes LLC*, 2020 U.S. Dist. LEXIS 22371, at *9 (D. Ariz. Feb. 10, 2020); *Horan*

*v. King Cty., Div. of Emergency Med. Servs.*, 740 F. Supp. 1471, 1481-82 (W.D. Wash. 1990); *Halferty v. Pulse Drug Co.*, 826 F.2d 2, 3 (5th Cir. 1987); *D'Annunzio v. Baylor Univ.*, 1999 U.S. App. LEXIS 39760, at *3 (5th Cir. Aug. 23, 1999).

## V.   THE DOL CANNOT ESTABLISH A FACTUAL BASIS FOR EITHER EQUITABLE ESTOPPEL OR EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS AGAINST PARTS AUTHORITY.

The statute of limitations for an FLSA claim accrues "the day the employee's paycheck is normally issued, but isn't." *See Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993). However, the Ninth Circuit recognizes two equitable doctrines which may be used to toll the FLSA limitations period in limited factual circumstances: (1) equitable estoppel and (2) equitable tolling. *See Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir. 1987).

The limitations period may be tolled if either: (1) the plaintiff is prevented from asserting a claim by the defendant's wrongful conduct (equitable estoppel) or (2) extraordinary circumstances beyond plaintiff's control made it impossible to file a timely claim (equitable tolling). *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (citing *Alvarez-Machain v. U.S.*, 107 F.3d 696, 701 (9th Cir. 1996)). Importantly, application of the doctrine of equitable estoppel requires proof that the defendant engaged in conduct with the intent of altering the plaintiff's conduct as well as proof that the *plaintiff relied upon* the defendant's conduct. *See Stallcop*, 820 F.2d at 1050; *Operating Engineers Pension Trust v. Cecil Backhoe Serv., Inc.,* 795 F.2d 1501, 1507 (9th Cir. 1986); *Cooley v. Air Methods Corp.*, 2020 U.S. Dist LEXIS 77832, at ** 6-7 (D. Ariz. May 4, 2020).

Unlike the factual record before this Court in *Cooley v. Air Methods Corp.*, the evidence in this summary judgment record is unequivocal. No driver deposed testified that he was misled by any Parts Authority representative about his status as an independent contractor, his inability to make a claim for premium overtime compensation, or his right to mileage reimbursement. (PASUF ¶¶ 111-112). Relevant case law is also clear that

misclassifying a worker as an independent contractor instead of an employee -- the exact misconduct alleged by the DOL in this case -- is not a basis for tolling the limitations period against the Defendant.  *See, e.g., Prentice v. Fund for Pub. Interest Research, Inc.*, 2007 U.S. Dist. LEXIS 71122, at \*\*7-8 (N.D. Cal. Sep. 18, 2007); *Archer v. Sullivan Cty.*, 1997 U.S. App. LEXIS 33052, at \*12 (6th Cir. Nov. 14, 1997); *Redman v. U.S. West Business Resources, Inc.,* 153 F.3d 691, 695 (8th Cir. 1998) ("even if [the employer] explicitly stated that the [the employees could not receive overtime compensation], [employees] have presented no evidence showing that [the employer] *intended* to mislead them."); *Claeys v. Gandalf Ltd.*, 303 F. Supp. 2d 890, 894-97 (S.D. Ohio 2004) (although plaintiff did not know he was entitled to overtime compensation until later because Defendants' statements regarding his exempt status were false, "To grant equitable tolling in such circumstances would void the statute of limitations entirely, as any FLSA plaintiff would qualify.").

Critical to this analysis is that an alleged misrepresentation regarding a classification under the FLSA, is a misrepresentation of law, not fact, which by definition cannot establish a claim for equitable estoppel.  *See Shunney v. Fuller Co.*, 111 F. Supp. 543, 545 (D.R.I. 1953) (misrepresentation as to coverage under the FLSA is one of law and not of fact, and is clearly insufficient, even if relied upon by the plaintiff to his detriment, to toll the running of the statute of limitations); *Viciedo v. New Horizons Comput. Learning Ctr. of Columbus, LTD.*, 246 F. Supp. 2d 886, 904 (S.D. Ohio 2003) (any alleged misrepresentations regarding hours worked are not the type of misrepresentations intended to toll the statute of limitation where plaintiff knew they were not being paid overtime).

A litigant seeking equitable tolling bears the burden of establishing two elements: whether the party (1) has acted with reasonable diligence during the time period he or she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.  *Lemley v. Graham Cty.*, 2014 U.S. Dist. LEXIS 199267, at \*15 (D. Ariz. May 15, 2014).   "Equitable tolling is a rare remedy to be applied in unusual circumstances, not as a cure-all for an entirely common state of affairs."  *Wallace v. Kato*, 549 U.S. 384, 396 (2007).  Indeed, the Ninth Circuit has instructed that equitable tolling is

available only in "extreme cases" and should be "applied sparingly." *Lee v. Venetian Casino Resort, LLC*, 747 Fed. App'x 607, 608 (9th Cir. 2019). Equitable relief should not be applied in situations where the plaintiff failed to exercise due diligence in preserving his legal rights. *Lemley*, 2014 U.S. Dist. LEXIS 199267, at *16.

Under this rubric, courts find no equitable tolling in cases simply because plaintiffs allege they were misclassified or underpaid under the FLSA. This is because the individuals were well-aware, every paycheck, that they were not being paid premium overtime compensation. *E.g. Barba v. Lee*, 2009 U.S. Dist. LEXIS 132415, at *92-94 (D. Ariz. Nov. 3, 2009) (refusing to toll FLSA limitations period); *Archer*, 1997 U.S. App. LEXIS 33052, at *12 (same).

Similarly, it is well-settled that ignorance of the law is not sufficient to warrant equitable tolling. *Hinton v. NMI Pac. Enterprises*, 5 F.3d 391, 397 (9th Cir. 1993) (finding "mistake as to the law" does not support equitable tolling); *Stallcop*, 820 F.2d at 1050 (finding equitable tolling not available even though defendant failed to notify her of the applicable statute of limitations because the defendant "had no duty to inform the plaintiff of the statute of limitations"); *Williams v. United States*, 711 F.2d 893, 899 (9th Cir. 1983) (holding it is plaintiff's responsibility to adhere to the procedural requirements underlying his claim and that it is not the defendant's duty to advise the plaintiff where an action might be present); *Archer*, 1997 U.S. App. LEXIS 33052, at **11-12 (the statute itself gave the plaintiffs constructive notice of the fact that the county was violating their rights under the FLSA and of the deadline for filing suit.)

In this case, the DOL began investigating Diligent in April 2015. (DSUF ¶¶ 116-117). During the course of the investigation, DOL asked Diligent to enter two separate tolling agreements. (PASUF ¶ 107). Notably the DOL did not interview any representative of Parts Authority as part of its investigation, nor did the DOL offer Parts Authority a tolling agreement for consideration. (PASUF ¶¶ 107-08).

It is therefore not surprising that the DOL was unable to identify any conduct by Parts Authority as an equitable basis to toll the statute of limitations.

PA's Interrogatory No. 2 provides:

The Complaint prays for judgment against Defendants that includes "equitable tolling of the applicable three-year statute of limitations to redress interference with, or delayed detection of the violations of the FLSA by the DOL due to Defendants' actions to confuse their workers as to their status as employees protected by the FLSA and/or to intimidate or coerce them from exercising their rights and status as an employee, and failure to maintain complete, accurate or full records . . . . " Identify and describe in detail your factual basis for alleging (i) that Defendants took action "to confuse their workers as to their status as employees protected by the FLSA and/or to intimidate or coerce them from exercising their rights and status as an employee," and (ii) that Defendants failed "to maintain complete, accurate or full records." (DOL Responses to Interrogatories, p. 5).

The DOL responded:

Defendants sought to confuse Delivery Drivers regarding their status as employees and/or intimidate or coerce them from exercising their FLSA rights as employees by, among other things: (1) requiring Delivery Drivers to sign **oppressive and misleading "Owner Operator" agreements** purporting to classify Delivery Drivers as independent contractors, when they are in fact, employees, and which purport to strip them of their FLSA private rights of action; (2) **sometimes failing to provide Delivery Drivers a copy of these agreements**, even upon Delivery Drivers' repeated requests for such copies, so that Delivery Drivers do not know the precise terms to which they are allegedly agreeing; (3) **requiring Delivery Drivers to wear "Diligent" uniforms which state that they are "Owner Operators"**; (4) **requiring Delivery Drivers to bear costs** that Defendants, as employers, should bear (including but not limited to the employer's share of Social Security contributions, workers' compensation insurance, uniforms, and fuel); (5) allegedly retaliating against Delivery Drivers for exercising their FLSA rights by having spoken to (or thought to have spoken to) representatives from the U.S. Department of Labor regarding alleged violations of the law. These actions, coupled with Defendants' repeated insistence to Delivery Drivers that they are "independent contractors" while directing and/or controlling the economic realities of the employment relationship confused and/or intimidated Delivery Drivers from exercising their FLSA rights and require equitable tolling of the applicable statute of limitations."

1   (PASUF ¶ 113, and Exhibit 19 to PASUF).  Notably none of the alleged conduct identified

2   in response to the interrogatory is attributable to Parts Authority.  As a result, there is no

3   basis for this Court to extend the statute of limitations against Parts Authority under either

4   a theory of equitable estoppel or equitable tolling.

5

6                                    **CONCLUSION**

7          Parts Authority made a business decision to become a customer of Diligent Delivery

8   Systems, a nationwide transportation and logistics provider to obtain additional delivery

9   services in Arizona.  Diligent contractually agreed to and did provide Parts Authority with

10  IC Drivers, all of whom signed agreements with Diligent acknowledging that they were IC

11  Drivers.  Diligent further agreed to pay the IC Drivers as required by law.

12         While clearly targeting Diligent's business model, DOL has unfairly included Parts

13  Authority in this litigation (but not Diligent's 14 other Arizona customers) who also utilize

14  IC drivers for their delivery needs.  As demonstrated herein, this Court should grant Parts

15  Authority's motion for summary judgment on the issue of joint employment and dismiss

16  Parts Authority from the case entirely.  However, should the Court disagree, it should at a

17  minimum find in Parts Authority's favor on the applicable statute of limitations and the

18  good faith affirmative defense to liquidated damages under the FLSA.

19

20         DATED this 8th day of July 2020.

21                                             **MATHESON & MATHESON, P.L.C.**

22                                             /s Michelle R. Matheson
                                               _____
23                                               Michelle R. Matheson, #019568
                                                 *Local Counsel for Defendant Parts Authority*
24

25                                               Sharon Stiller *(pro hac vice)*
                                                 **ABRAMS, FENSTERMAN, FENSTERMAN,**
26                                               **EISMAN, FORMATO, FERRARA & WOLF, LLP.**
                                                 160 Linden Oaks, Suite E
27                                               Rochester, NY 14625
                                                 *Attorney for Defendant Parts Authority*
28

# CERTIFICATE OF SERVICE

I hereby certify that on <u>July 8, 2020,</u> I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Janet M. Herold
Andrew J. Schultz
Boris Orlov
Hailey Mcallister
Paige Pulley
Eduard R. Meleshinsky
**UNITED STATES DEPARTMENT OF LABOR**
350 S. Figueroa St., Suite 370
Los Angeles, California 90071-1202
orlov.boris@dol.gov
*Attorneys for Plaintiff Secretary of Labor*


Peter N. Kirsanow
Richard Hepp
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
pkirsanow@beneschlaw.com
rhepp@beneschlaw.com

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Julie E. Maurer
David C. Clukey
Julie.Maurer@lewisbrisbois.com
David.Clukey@lewisbrisbois.com
*Attorneys for Defendant Arizona Logistics, Inc.,*
*d/b/a Diligent Delivery Systems*


**KEVIN H. GEORGE & ASSOCIATES, PC**
Kevin H. George
kmas7656@aol.com

**JENNINGS, STROUSS & SALMON, P.L.C.**
John J. Egbert
Christopher M. Mason
jegbert@jsslaw.com
cmason@jsslaw.com
*Attorneys for Larry Browne*


  /s Christina Hackett