Kevin H. George, *pro hac vice*
Texas Bar No. 07805850
Kevin H. George & Associates, PC
440 Louisiana Street, Suite 1225
Houston, Texas 77002
(713) 655-0200/(713) 655-9035 (Fax)
kmas7656@aol.com

John J. Egbert - Arizona Bar No. 011469
jegbert@jsslaw.com
Christopher M. Mason - Arizona Bar No. 019891
cmason@jsslaw.com
Jennings, Strouss & Salmon, P.L.C.
One East Washington Street, Suite 1900
Phoenix, Arizona 85004
(602) 262-5994/(602) 295-2615 (Fax)

*Attorneys for Larry Browne*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Eugene Scalia, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>vs.<br><br>Arizona Logistics, Inc., d/b/a Diligent Delivery Systems, an Arizona corporation; Larry Browne, an individual; and Parts Authority Arizona LLC, an Arizona limited liability company,<br><br>Defendants. | No. 2:16-cv-04499-PHX-DLR<br><br>**DEFENDANT LARRY BROWNE'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

Defendant Larry Browne ("Browne") serves as the Chief Executive Officer ("CEO") of Arizona Logistics Incorporated, d/b/a Diligent Delivery Systems ("Diligent Delivery"), making only general high-level decisions.  Indeed, as the years passed since the incorporation of Diligent Delivery in 2006, he has had declining involvement in the more nuanced operations, deferring to the decision-making and judgment of operational management and leadership and mid-level management. Since at least early 2012, if not much earlier, he has had no involvement in securing Owner-Operators, retaining or terminating their relationships, coordinating their pay,

or directing their work. Like other CEOs, his time and responsibility are directed to big picture issues. But this is not sufficient to deem him an "employer" under the FLSA, which requires much greater direct oversight and involvement. On-point case law demonstrates that where ownership and leadership are not directly involved in hiring/firing decisions, pay arrangements, and worker control, claimants cannot meet their burden of proving that the individual executives or owners should be treated as "employers" or joint employers under the FLSA. Consequently, there is insufficient evidence in this case to pursue Browne as an employer and, thus, summary judgment should be granted in his favor on that independent basis.[1]

## I.   FACTUAL BACKGROUND

The class of over 1,600 Owner-Operators in this case are disputed independent contractors. (Diligent's SOF at ¶¶ 2-3 & Diligent Delivery's Motion for Summary Judgment, filed July 8, 2020.)[2] They entered into contractual relationships with Diligent Delivery to accept or reject opportunities to provide delivery of vehicle parts to various customers primarily in Arizona. (Diligent's SOF at ¶ 7.) Diligent Delivery was incorporated in Arizona in 2006. (Browne's SOF at ¶ 1.)

Browne serves as the CEO and President of Diligent Delivery, but since at least the beginning of 2012, if not much earlier, he has left most of the regular daily or regular operational decisions to other managers and executives of Diligent Delivery. (Browne's SOF at ¶¶ 2-5.) Three such managers, Suzanne Gudgeon, John Caccavella, and John Flores, had limited direct interactions with Browne, and maybe met or spoke with him when they were first hired or to later exchange holiday pleasantries. (Browne's SOF at ¶ 6.)

---

[1] Defendant Larry Browne also joins in on the Motion for Summary Judgment filed by Diligent Delivery.

[2] The Separate Statement of Facts filed in Support of Defendant Diligent Delivery's Motion for Summary Judgment is referred to herein as "Diligent's SOF"; the Separate Statement of Facts filed in Support of Defendant Browne's Motion for Partial Summary Judgment is referred to herein as "Browne's SOF."

Diligent Delivery employs a general manager and an operations manager at its office in Arizona to solicit clients and identify IC Drivers to provide delivery services. (Diligent's SOF at ¶ 2.) The primary manager, Robert Williams, was hired to re-open the Arizona market and, thereby, had virtual autonomy to act with the independent contractor model adopted by Diligent Delivery. (Browne's SOF at ¶ 7.) Mr. William's autonomy is apparent from the fact that he went for seven months without even speaking with Browne in the 2017-18 timeframe. (Browne's SOF at ¶ 8.) He generally spoke with Browne on average five or six times per year. (Browne's SOF at ¶ 9.) Browne was and is not known to the employees of the customers or to the Owner-Operators.[3] (Browne's SOF at ¶ 10.)

Browne did not personally contract, or arrange for Diligent Delivery's contractual relationships, with the Owner-Operators in this case. (Browne's SOF at ¶ 14.) Indeed, the Owner-Operators are located through Craigslist advertisements and referrals from other Owner-Operators. (Diligent's SOF at ¶ 14.) Browne does not decide which Owner-Operators Diligent Delivery may continue to contract with at any material time. (Browne's SOF at ¶¶ 15-17.) He does not coordinate the Owner-Operator routes or requested projects. (Browne's SOF at ¶ 20.) He does not decide, or even delegate, which particular opportunities are presented to which Owner-Operators. (Browne's SOF at ¶ 21.) He rarely if ever interacts with particular Owner-Operators and has not ever directly interacted with the vast majority of them. (Browne's SOF at ¶¶ 19 & 22.) He did not complete any hiring, immigration, employment, payroll, tax reporting, or other personnel records for those individuals, as no such records were prepared or kept by Diligent Delivery. (Browne's SOF at ¶

---

[3] Of the 14 depositions of customer employees, 12 (or 85.71%) either did not know Browne at all or did not mention Browne at all. (Diligent's SOF at p. ¶ 11.) Two of the 14 deponents (14.29%) testified to limited interaction with Browne consistent with interactions expected of a logistics company CEO. (Diligent's SOF at ¶ 12.) None of the nine Owner-Operator deponents testified that they knew or heard of Browne. (Diligent's SOF at ¶ 13.)

7164187v3(68545.1)

23.) Other than for a few short visits, he rarely has even set foot in the State of Arizona in the last decade. (Browne's SOF at ¶ 24.)

## II. LEGAL DISCUSSION

### A. Summary Judgment Standard.

Summary judgment should be granted where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Magnetar Techs. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1155 (9th Cir. 2015). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party on a particular issue, there is no genuine dispute for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

### B. The Secretary has not Met its Burden of Proving that Browne is an "Employer" Within the Meaning of the FLSA.

Browne bears no resemblance to what one would traditionally consider to be an employer, but the Secretary nonetheless seeks for this Court to treat him as one. The Secretary wrongly attempts to characterize him as an employer because of his status as owner, director, and CEO of Diligent Delivery. In attempting to do so, the Secretary disregards the active and functional levels of management involved in Diligent Delivery's daily operations. In fact, the Secretary routinely confuses Browne's role by referencing decision-making and administrative decisions made by others within the organizational framework as though these actions were undertaken by Browne.

Only "employers" are liable for obligations imposed by the FLSA. 29 U.S.C. §§ 203(d), 206(a), 207(a)(1) & 216(b). An individual company officer or owner can only be swept within this definition if he or she directly "exercise[d] control over the nature and structure of the employment relationship" with the purported employees.

1 *Boucher v. Shaw*, 572 F.3d 1087, 1090-91 (9th Cir. 2009).  "[B]efore a person or entity can be a joint employer, it must possess the attributes of an employer. . ." *Courtland v. GCEO-Surprise, LLC*, 2013 WL 3894981 at *2 (D. Ariz. 2013).

To determine whether this standard is met, courts must analyze the "economic reality" of the purported relationship.  Within the Ninth Circuit, four factors must be considered, namely, whether the individual (1) had the power to hire and fire the purported employees; (2) supervised and controlled the purported employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records for the supposed employees. *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).  These same factors were recently adopted by the U.S. Department of Labor as the proper interpretation of joint employer status under the FLSA.  29 C.F.R. § 791.  The burden of proof rests with the claimant to demonstrate that a defendant is an employer within the meaning of the FLSA.  *Orquiza v. Walldesign, Inc.*, 2013 WL 3027765 at *4 (D. Nev. 2013).

The Secretary has not introduced an iota of evidence to support these foundational requirements to treat Browne like an employer.  There is no evidence that he had the authority to hire and fire the Owner-Operators, that he supervised their work schedules or conditions of purported employment, that he determined the rate and method of their pay, or that he maintained anything akin to employment records for them.  To the contrary, it is undisputed that Browne worked in a different state and had no contact with the majority of them.  (Browne's SOF at ¶¶ 10-12, 22 & 24.)  Indeed, the Secretary attempts to sidestep the elements of required proof through innuendo and conjecture, and generic references to Browne's job title and ownership interest.  But were a job title or an ownership interest all that was required, the Ninth Circuit's clear standard set forth in *Bonnette* for proving employer status would be superfluous.  And every owner and CEO would be held accountable for a company's alleged FLSA violations.  This clearly is not the legal standard.

The Secretary has therefore previously cited to supposed actions by Browne dating back to the early 2000s to try to establish the requisite employer status, but overlooks the fact that the relevant period could be no earlier than December of 2013 given when the Secretary brought suit in December of 2016. 29 U.S.C. § 255 (the FLSA provides for a 2- to 3-year lookback period). What Browne may or may not have done in the early 2000s does nothing to prove whether he was an employer from December 2013 forward. Of the more than 1,600 owner-operators that the Secretary has swept into the case, there is no evidence that any of them even began providing services to Diligent Delivery in the early 2000s, let alone that all of them had an employee-employer relationship with Browne.[4] For that reason, summary judgment should be entered in Browne's favor.

> 1. **Browne did not have the Functional Power to Hire and Fire the Owner-Operators Because They Worked Pursuant to Agreements Entered into by Others.**

There is no dispute that CEOs and other company executives generally exercise a great deal of authority at a company, but where the power to hire or fire a class of workers is vested in other managers, the power to hire and fire should <u>not</u> be attributed to higher-level leadership. *Orquiza v. Walldesign, Inc.*, 2013 WL 3027765 at *3 (D. Nev. 2013). Courts have recognized that mere status and general power is not enough to assume hiring and firing authority for purposes of "employer" status under the FLSA. *See Gray v. Powers*, 673 F.3d 352, 355-56 (5th Cir. 2012). "The cases do not suggest, however, that merely being an officer or shareholder subjects an individual to FLSA liability . . . . [A] status-based inference of control cannot alone suffice to create a genuine fact issue whether [defendant] had the power to hire and fire . . . ." *Id.*; *accord Buenaventura v. Champion Drywall, Inc. v. Nevada*, 2012

---

[4] This also raises a troubling problem with respect to the certification of the actionable "class" for this matter to the extent that the Secretary attempts to treat all of the Owner-Operators the same for purposes of pursing Browne, given that they are not all uniformly situated relative to Browne's declining involvement in and authority for, Diligent Delivery over the years.

WL 1032428 at *7 (D. Nev. 2012) (holding that 50% owner, and Secretary/Treasurer, of company not "employer" within meaning of FLSA absent indication that she had actual authority expressed in the 4-part *Bonnett* test).

This principle is widely-recognized, and well demonstrated in *Orquiza*. In that case, the Plaintiffs named both the owner/founder of the company and the company's vice president as co-defendants, asserting that they were "employers" for purposes of the FLSA. 2013 WL 3027765 at *3. Although those executives inherently would have had significant power within the organization, the court recognized that they did not exercise hiring and firing control, as those responsibilities were delegated to "middle level managers-foremen, crew supervisors, or superintendents." *Id.* The court further recognized that there was "no evidence" that the lower to middle level managers hired or fired any of the plaintiffs at the specific direction of the executive defendants, and that "[n]one of the plaintiffs even admitted that they had ever seen or met either [of the individual executive defendants]." *Id.* This was dispositive for the court's finding that this factor favored the individual defendants. *Id.*

In this matter, the Owner-Operators work pursuant to established agreements, with established terms of service, entered into by other managers and leaders at Diligent Delivery. (Browne's SOF at ¶ 17.) The particular Owner-Operators are not selected by Browne. (Browne's SOF at ¶¶ 12-17.) Others identify them, and enter into the hiring arrangement. (Browne's SOF at ¶ 17.) Those arrangements are not regulated or determined by Browne, and he does not retain the liberty to terminate Owner-Operators. (Browne's SOF at ¶¶ 14-16.) Those decisions are made by contract. Thus, this factor again leans in favor of finding that Browne is not an employer.

### 2. *Browne did not Supervise or Control the Owner-Operator Schedules or Methods of Pay.*

Similar to the assessment of hiring and firing authority, supervision and control over the Owner-Operator schedules and pay was handled by on-the-ground managers, not Browne. He did not set schedules, offer up schedules, or individually select Owner-Operators for specific opportunities. Assertions of control "over the big picture operations of the entire [company] enterprise" are insufficient to satisfy this factor – it is the direct control over individual schedules and methods of pay that governs. *Orquiza*, 2013 WL 3027765 at *4. Consequently, this factor also favors a finding that Browne is not an "employer" within the meaning of the FLSA.

### 3. *Browne did not Determine the Rate and Method of Payment Because These Day-to-Day Decisions Were Handled by Other Management.*

Very similar to the leadership arrangement at issue in *Orquiza*, Browne operated at a "big picture" level, but it is the day-to-day pay decisions made by lower-level management that matter. (Browne's SOF at ¶¶ 3-10, 14-17.) The court in *Orquiza* recognized that while the owner and executive leaders in that case made decisions that may have had some impact on pay, it was the "mid-level managers [who] would explain and discuss pay rates prior to beginning work on any project." Those mid-level managers determined pay and method of payment, not "the owner and president or vice president." 2013 WL 3027765 at *4.

### 4. *Browne did not Maintain Employment Records for the Owner-Operators.*

As a threshold matter, the Owner-Operators were never treated as employees and, thus, there are no employment records for them, whether maintained by Browne or other personnel with the company. Thus, this factor favors Browne. Even were one to consider the Owner-Operator agreements and compensation records to be the relevant "employment records" for purposes of this factor, they were maintained by administrative personnel at Diligent Delivery, not by Browne. (Browne's SOF at ¶

23.) Consequently, this factor further demonstrates that Browne is not an "employer" within the meaning of the FLSA. *Orquiza*, 2013 WL 3027765 at *4 (ruling that there was no evidence that the executives maintained employment records and granting summary judgment on their contention that they were not "employers").

### 5. Attempting to View Browne as "Joint Employer" is Misplaced, as the Intent was for the Owner-Operators to be Independent Contractors, Which Warrants a Higher Factual Showing.

Attempts at post-hoc re-characterization of the Diligent Delivery's relationship with the Owner-Operators does not change the fact that Browne's involvement should viewed through the prism of the relationship that was intended – namely, an independent contractor relationship. He had little to no direct involvement with Diligent Delivery's independent contractors. (Browne's SOF at ¶¶ 10-14 & 19.) As a CEO, that is not surprising.

This is an important consideration because general employment status is not at issue in the majority of cases evaluating whether to extend the "employer" label to individuals who own or operate a company. Here, the Owner-Operators were designated as independent contractors and signed agreements to that effect. (Browne's SOF at ¶ 17.) This added factor removes Browne one step further from the "employer" label. He not only had inadequate direct control, but he never would have perceived the Owner-Operators as employees, pitting himself to the prospect that he individually would be proclaimed their "employer." He never would have acted as their "employer," or engaged in conduct seen by individuals deemed "employers" in other cases. Lest we forget that "before a person or entity can be a joint employer, it must possess the attributes of an employer. . ." *Courtland v. GCEO-Surprise, LLC*, 2013 WL 3894981 at *2 (D. Ariz. 2013).

This conceptual disconnect with designating Browne a "joint employer" for individuals identified at the time as independent contractors is further exacerbated by the utter void of consistent legal guidance in this type of situation. How could an individual company owner or officer anticipate and avoid the duality of the re-

9

1 characterization of the relationship and, further, consequent personal liability as a re-
2 labeled "joint employer"?  At the very least, direct involvement and knowledge of the
3 risk must be present.  The Owner-Operators here were not like employees in the
4 traditional sense, even if one calls them such after the fact.  Browne would not have
5 seen them in the work hallways, instructed them in their daily tasks, or overseen their
6 work performance.  (Browne's SOF at ¶ 19.)  He never could have anticipated being
7 personally haled into Court as a "joint employer."

8       Absent such a standard, expecting individuals to anticipate the personal risk is
9 unreasonable.  This is particularly the case when we consider the widely-recognized
10 legal vagaries, and the regular court and jurisdictional inconsistencies, when
11 evaluating the independent contractor / employee dichotomy.  *United States v.*
12 *Velasquez-Hernandez*, 2020 U.S. Dist. LEXIS 15144 *8 (S.D. Cal. 2020) (citing *Hill*
13 *v. Colorado*, 530 U.S. 703, 732 (2000)); *see also Anderson v. Morrow*, 371 F.3d
14 1027, 1032 (9th Cir. 2004).  Given the varying, irregular, and inconsistent legal
15 guidance on these issues, individual owners and officers should not be treated as
16 "joint employers" in cases involving designated independent contractors absent clear
17 and convincing evidence of awareness of the risk and direct involvement in the
18 relationship.  No such evidence is present in this case.

19 **III.   CONCLUSION**

20       For the foregoing reasons, Defendant Larry Browne respectfully requests the
21 Court to enter partial summary judgment in this matter in his favor, finding that he is
22 not an "employer" for purposes of the FLSA, and consequently, that there is no
23 jurisdiction to pursue him for damages under the FLSA.

24 //
25 //
26 //
27 //
28 //

RESPECTFULLY SUBMITTED this 8th day of July, 2020.

JENNINGS, STROUSS & SALMON, P.L.C.

By _s/ Chris M. Mason_
John J. Egbert
Chris M. Mason
One East Washington Street, Ste. 1900
Phoenix, Arizona 85004-2554

Kevin H. George
440 Louisiana Street, Ste. 1225
Houston, Texas 77002
*Attorneys for Defendant Larry Browne*

# CERTIFICATE OF SERVICE

☒   I hereby certify that on July 8, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

>Janet M. Herold
>Regional Solicitor
>Boris Orlov
>Orlov.boris@dol.gov
>Senior Trial Attorney
>Hailey R. McAllister
>Mcallister.hailey@dol.gov
>Paige Bree Pulley
>Pulley.paige.b@dol.gov
>OFFICE OF THE SOLICITOR
>UNITED STATES DEPARTMENT OF LABOR
>350 S. Figueroa St., Suite 370
>Los Angeles, California 90071-1202
>
>Eduard R. Meleshinsky
>Meleshinsky.eduard.r@dol.gov
>OFFICE OF THE SOLICITOR
>UNITED STATES DEPARTMENT OF LABOR
>90 7th St., Suite 3-700
>San Francisco, CA 94103
>
>*Attorneys for Plaintiff Secretary of Labor*
>
>Peter N. Kirsanow
>pkirsanow@beneschlaw.com
>BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
>200 Public Square, Suite 2300
>Cleveland, Ohio 44114-2378
>
>Julie E. Maurer
>Julie.maurer@lewisbrisbois.com
>David C. Clukey
>David.clukey@lewisbribois.com
>LEWIS BRISBOIS BISGAARD & SMITH, LLP
>2929 N. Central Ave., Suite 1700
>Phoenix, AZ 85012
>
>*Attorneys for Defendant Arizona Logistics, Inc.,*
>  *d/b/a Diligent Delivery Systems*

7164187v3(68545.1)

Sharon P. Stiller
sstiller@abramslaw.com
ABRAMS FENSTERMAN FENSTERMAN EISMAN FORMATO FERRERA & WOLF LLP
160 Linden Oaks, Ste. E
Rochester, NY 14625

Michelle R. Matheson
mmatheson@mathesonlegal.com
MATHESON & MATHESON, P.L.C.
15300 North 90th Street, Suite 550
Scottsdale, Arizona 85260
Email:

*Attorneys for Defendant Parts Authority Arizona LLC*

☐   I hereby certify that on _____, I served the attached document by _____ (insert service method: mail, courier service, in-person delivery, e-mail) on the following, who are not registered participants of the CM/ECF System:


                                *s/ Kathrine A. Roberts-Burch*

7164187v3(68545.1)