# EXHIBIT 7

DILIGENT DELIVERY SYSTEMS

*Logistics Specialist*
*Solutions You Can Trust*

## MASTER CLIENT SERVICES AGREEMENT

THIS AGREEMENT is made and entered into this 30th Day of August, 2010, by and between Diligent Delivery Systems) (hereinafter "DILIGENT") whose corporate office is located at 333 North Sam Houston Pkwy. East, Suite 500, Houston, TX 77060, and Parts Authority, (hereinafter "Client"), whose corporate office is located at 211-10 Hillside Ave., Queens Village, NY 11427.

Whereas, Client desires a delivery logistics system and its delivery service.

Whereas, DILIGENT is in the delivery logistics business; and

Whereas, **DILIGENT** has entered into contracts with a large pool of parts-delivery businesses ("Delivery Owner Operators"") and is willing to notify Owner Operators of opportunities to deliver product for Client.

Now, therefore, in consideration of the promises set forth herein and other valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. DILIGENT will develop a delivery logistics system for Client.

2. DILIGENT, at Client's request, shall inform Owner Operator's of the opportunity to provide delivery services for Client. All services to be provided by DILIGENT and by an Owner Operator shall remain completely separate and independent from each other. Neither Client nor DILIGENT is in any way responsible (i) for providing or maintaining any tools or vehicles that might be needed, or (ii) for any costs or expenses that might be incurred by Owner Operator's in connection with delivering parts for Client.

3. The term of this agreement shall be for **12 Month(s)**, the term shall commence on or before, 9/15/2010. Upon expiration of the initial term hereof, this agreement will automatically renew for an additional term of Thirty-days (30-days). Both parties may negotiate new terms to extend this agreement for a determined amount of time anytime during the 30-day renewal periods. DILIGENT or Parts Authority may terminate this agreement by providing the other party with a minimum thirty-days advance written notice at anytime during this agreement after the 60th day of service.

4. Client shall pay DILIGENT for the services it provides and the service provided by the Owner Operator's based on an agreed flat monthly rate. This flat monthly rate excludes New Years




Copyright (c) 2001 DILIGENT. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

Day, Memorial Day, the 4th of July, Labor Day, Thanksgiving day, and Christmas Day pursuant to the following rate schedule:

See Addendum for each position contracted through Diligent that is participating under this MASTER SERVICE AGREEMENT. Each addendum will reflect the stipulations and pricing for each contract position Parts Authority will ask Diligent to facilitate. The addendum will also refer back to the Master Service Agreement that Parts Authority and Diligent have agreed to and approved.

***DILIGENT will maintain the right to adjust agreed OPERATORS rates if daily mileage, client service requirements, or vehicle size increase or change during the term of this agreement. DILIGENT will notify customer in writing 15 days prior to adjusting invoice rates on the effective rate change date. Thereafter, any change in rate must be evidenced by a written instrument signed by both parties to be enforceable.**

DILIGENT allows a 10-day grace period on payment before service in interrupted

5. The particular pricing provided under this agreement currently includes a reasonable increase in fuel costs and Client will not be invoiced a Fuel Surcharge. Diligent and Client agree to review this portion of the agreement after the 12th month of service provided under this agreement.

6. In the case of damaged or lost freight. Items of client picked up by Operator shall be deemed to be in the care, custody and control of Operator until the same shall have been delivered to, and accepted by, the designated consignee, recipient of the consignee or recipient's authorized agent.

7. DILIGENT agrees to reimburse Client for freight that is lost or damaged while in the possession of an Operator after sufficient investigation of the claim is completed. Client agrees that in order for it to be reimbursed for lost or damaged freight, that Client must report the loss or damage, using DILIGENT's claim form, within 7 days of the Operator's delivery of the affected freight. Reimbursement will be at Client's cost of the lost or damaged freight. Reimbursement will occur within 30 days of receipt of Client's report. Client agrees that reimbursement is the agreed means to recover for lost or damaged freight and that Client will not deduct any sums from DILIGENT invoices for lost or damaged freight. Client may offset the claim if a resolution of the claim is not provided within the allotted 30 day time period from when the claim was reported to Diligent.

8. DILIGENT expends substantial time and expense in locating and engaging with Owner Operator that are willing to accept contract opportunities. Client will be exposed to these experienced Owner Operators through the use of DILIGENT's logistic services. Client agrees that employing or directly contracting with an Owner Operators, made known to Client, during the term of this agreement and for three (3) months thereafter would interfere with DILIGENT's ability to make contract opportunities available to the operator. Accordingly, if Client terminates this


Copyright (c) 2001 DILIGENT. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

agreement, then Client agrees to pay DILIGENT A one time opportunity fee of $1,500.00 for each Owner Operators that Client employs or contracts with as an Owner Operator (i.e. parts delivery driver) if such employment or contract occurs during the term of this agreement or within three (3) months of its termination, without regard as to the manner of its termination. Client may provide Diligent notice of an opportunity for Operator to become an employee of Client and at that time must give Diligent a written 15 day notice of the intent of Client to employ Operator as anything other than a delivery driver. In such event, Diligent will waive the opportunity fee and replace Operator with a new qualified Owner Operator driver. If in the case, Diligent terminates the services of the Owner Operator assigned to Client, Client may pursue the option to employ Owner Operator at the Clients own risk. Once employed by Client, the Owner Operator will no longer have any recourse against Diligent in any matter in the future.

9. The parties are, and intend to remain, independent Owner Operators (Contractors) from each other, and from the Owner Operator. The parties further acknowledge and agree that any Owner Operator that agrees to perform services for Client shall be an Owner Operator with respect to both Client and DILIGENT. No agency, employment, joint venture, or partnership shall be created hereby or between these parties, and neither party hereto shall make any representation that would create the appearance of such a relationship. DILIGENT shall clearly advise any Owner Operator it informs of an opportunity to provide services for Client that DILIGENT, Client and the Owner Operator are all independent operators with respect to each other and that no other relationship shall exist as between such parties.

10. DILIGENT hereby covenants and agrees to indemnify Client and its affiliates, officers, directors, employees and agents (collectively "Client") fully and to defend and hold same forever harmless from all losses, damages, expenses (including reasonable attorney fees and costs), claims, demands, actions, causes of action and liabilities whatsoever ("Losses") arising out of any action or omission of DILIGENT and/or Owner Operator(s) in the performance of services under this Agreement. The Owner Operator(s) assigned to client are considered primary in Losses resulting from the actions or omissions of the Owner Operator in the performance of services under this agreement, including Losses resulting from a 3rd party claim for bodily injury or property damage. Without limiting the broad scope of this indemnification, the parties further agree that Diligent shall indemnify, defend and hold harmless client from any Losses resulting from a claim of the Owner Operator for bodily injury or property damage or Losses resulting from a claim of the Owner Operator for compensation or money due which is in excess of the service rates set forth in this agreement. Diligent will provide a secondary line of security in favor of client in regards to liability by supplying client a certificate of insurance as an additionally insured on Diligent's liability insurance policy as stated in section 12 of this




Copyright (c) 2001 DILIGENT. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

agreement. It is hereby understood that the Owner Operator(s) that is assigned to Client have agreed and signed the Diligent Owner Operator Agreement stipulating that not only are they indemnifying Diligent, its shareholders, officers, directors, employees, agents, licensees, successors, but the same indemnity, release, hold harmless and defend applies to the Client named on this Client Services Agreement. For insurance purposes, the insurance carrier will provide an endorsement to Client specifying certain coverage application provided within the insurance certificate adding Client as an additionally insured.

Diligent further agrees to provide in its contract with Owner Operators under contract to provide services to Client that the Owner Operators will indemnify Client and its affiliates, officers, directors, employees and agents (collectively "Client") fully and to defend and hold same forever harmless from all losses, damages, expenses (including reasonable attorney fees and costs), claims, demands, actions, causes of action and liabilities whatsoever ("Losses") arising out of any action or omission of the Owner Operator(s) in the performance of services under this Agreement. The Owner Operator(s) assigned to client shall be considered primary in Losses resulting from the actions or omissions of the Owner Operator in the performance of services under this agreement, including Losses resulting from a 3rd party claim for bodily injury or property damage. Without limiting the broad scope of this indemnification, unless prohibited by law, the Owner Operators indemnity obligation in favor of Client shall additionally apply whether or not the damage, injury or loss was caused or contributed to by the sole or concurrent negligence of Client. Each Owner Operator will be notified of the Clients expectations of the assignment and Code of Conduct to be presented and agreed upon by Owner Operator prior to accepting assignment with Client. (See attached Code of Conduct, Exhibit A)

11. Except as otherwise expressly provided herein, (i) no party shall have the power or authority to act on behalf of the other, or to create obligations or debts that would be binding upon the other, and (ii) no party shall be responsible for any obligation or expense of the other, or be responsible for any act or omission of the other or of any employee or agent of the other.

12. DILIGENT will obtain and maintain a minimum of $1,000,000.00 general liability insurance policy plus additional cargo coverage with Client named as an additional insured. Diligent will provide customer with a copy of the insurance certificate with the Client named as an additional insured, once this agreement has been approved.

13. All insurance policies and certificates shall be in forms and issued by insurance companies acceptable to Client's Risk Management Department. All insurance policies and certificates of insurance shall provide that the policies may not be canceled or altered without thirty-day (30)


Copyright (c) 2001 DILIGENT. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

prior written notice to the Client's Risk Management Department. If at any time during this agreement, Diligent becomes uninsured, Client may cancel agreement without notice, but may allow Diligent 48 hours to supply client with an updated and current Insurance Policy.

14. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York without regard to its choice of law rules. In the event of a breach of this agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs from the other party in addition to any other relief that is awarded. Any and all disputes arising out of, or relating to, the performance of services under this Agreement shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, or any successor then prevailing. The parties agree that the forum for any legal proceeding, including arbitration, shall be exclusively within the state of New York. Such arbitration shall be final and binding upon the parties, and the sole and exclusive remedy of the parties with respect to the dispute, except for a suit to enforce the award. The costs of such arbitration shall be borne equally by the parties. This Paragraph 14 shall survive the termination of this Agreement.

15. DILIGENT warrants and represents that it complies with all State, Federal, equal opportunity laws and regulations. Diligent further represents & warrants that prior to engaging an Owner Operator to provide services, it has verified (and periodically verifies thereafter) that Owner Operator has a current and valid driver's license, current adequate automobile insurance, and that a current DMV report has been supplied to perform the services contemplated herein. Client may also request Diligent to terminate an Owner Operators assignment with client if Owner Operator is presumed to be providing services in an unsafe manner based on Clients requirements.

16. This agreement contains the entire agreement between Diligent & Client, and its terms may not be amended except by a written instrument signed by both parties.

| DILIGENT DELIVERY SYSTEMS | PARTS AUTHORITY |
|---|---|
| By: [signature] | By: [signature] |
| Print Name: Scott E Bruder | Print Name: Richard McMullen |
| Title: CSO EVP of Sales | Title: General Manager |
| Date: 9/13/2010 | Date: 9/9/2010 |

All information in this document is to remain confidential between DILIGENT and Client




Copyright (c) 2001 DILIGENT. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

Driver Code of Conduct Exhibit A

The success of your business and that of Diligent depends on making certain that our customers are satisfied with the performance of each delivery opportunity every day. We have learned from our customers about their expectations. We share that knowledge in order to help you provide consistent professional delivery services. This Code of Conduct is provided to all contractors. Each Owner Operator has been notified, has accepted, and will abide by the code of conduct presented from this agreement.

- For security reasons and for efficiency customers need to readily know who they are dealing with. All drivers should be in uniforms with the Diligent name visible at all times while delivering or picking up product. Uniforms should be neat and clean, no cut offs or torn clothing. Drivers should be clean and well groomed.
- Customers need to be able to communicate easily with drivers in order to know when deliveries will occur and to deal with unexpected circumstances. All drivers should carry Sprint/Nextel two-way direct connect communication devices to facilitate customer communications. (This may also include GPS tracking and delivery route monitoring.)
- Customers expect the carriage of their property in an undamaged condition. All drivers should have the proper equipment to perform contract services including vehicle tarps and web nets to secure and protect client property in uncovered vehicles, dolly or pallet jacks, lift gates if required for straight truck assignments, and any other tools the customer requires to accomplish each delivery successfully.
- Customer's rely on timely and efficient deliveries. You earn more by advance planning. Carrying a road atlas, key map, mapsco, GPS route planner, or Thomas guide helps both you and the customer.
- Confusion concerning what is being loaded and delivered reflects poorly on your business and that of Diligent. Loads should be verified before leaving the dock. You will be provided with either an electronic system or paper manifest. Any shortages or damaged goods should be reported to the dispatcher. Checking and verification protects you from later claims for shortages from customers. Your contract provides for the recovery of damages from you in the event of shortages, damaged goods or delivery opportunities that are not completed.
- Customers expect that their property be stored in a manner to prevent theft. Contractors should keep their vehicles locked and the alarm systems activated at all times that the contractor is not present in the vehicle.


Copyright (c) 2001 DILIGENT. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

- Our customer relations with their customers are based on the accurate accountable delivery of goods. Contractors should verify piece count and obtain a signed delivery receipt from the consignee verifying the delivery, the condition of the items and any shortages or damages.
- Customers not only have outbound delivers but delivers that are inbound. The pick up of items to be returned is as important as outbound deliveries. Contractors should obtain signed receipts for items to be returned from the party returning the item. Contractor should verify and note any damages or shortages to items to be returned and make the greatest effort possible to get the returned items to the recipient or warehouse no later than the day the item is picked up.
- Customers expect to be able to verify returns, damaged items and shortages. Verification should be done on a daily basis. All returns, damaged items and shortages should be listed on a Return Authorization form, a Closed Loop or on a manifest.
- Customers expect current daily paperwork. The failure to do paperwork on a daily basis causes delays and accounting difficulties for customers. Contractors should complete all paperwork each day and return that paperwork to the warehouse or client.
- Customers are obligated to be sensitive to any claimed harassment of their employees. Harassment can take many forms. Some are "off color" humor, comments of a sexual nature and dating. It makes little difference whether the actions are yours of those of the customer employee. Accordingly, undue familiarity with customer employees should be avoided. A professional and business like relationship should be maintained at all times.
- Contractors will be considered "Customer Service Ambassadors" to all


Copyright (c) 2001 DILIGENT. All rights reserved. Duplication in part or whole in any form whatsoever is prohibited.

# MASTER CLIENT SERVICES AGREEMENT ADDENDUM

**WHEREAS**, Diligent Delivery Systems Inc.("Diligent" or "Contractor") and Parts Authority Inc. entered into a Master Client Services Agreement on or about the 30th day of August, 2010, in which Diligent agreed to provide logistics delivery services to Parts Authority Inc.

**WHEREAS**, Diligent remains under obligation to provide proof of insurance and to maintain such insurance coverage in and for the benefit of client for the time frame covered under the existing Master Client Services Agreement.

**WHEREAS**, Diligent remains under obligation to indemnify and hold harmless Parts Authority Inc. and its affiliates, officers, directors, employees and agents pursuant to the terms of the existing Master Client Services Agreement.

**WHEREAS**, both Diligent and Parts Authority Inc. and its affiliates are desirous of increasing the number of independent contractor owner/operator drivers supplied by Diligent under the Master Client Services Agreement.

**WHEREAS**, any such modification to the Master Client Services Agreement must be in writing.

**IT IS HERETOFORE AGREED**, the Master Client Services Agreement is modified solely to the extent described herein and that all other terms and conditions of the Master Client Services Agreement shall remain in full force and effect except to those terms and conditions specifically modified or added herein.

(A) PA Austin LLC, a New York corporation with offices at 211-10 Hillside Avenue, Queens Village, NY 11427 and Diligent agree that PA Austin LLC shall be a beneficiary to the Master Service Agreement dated August 30th 2010 and that Diligent shall provide PA Austin LLC with all of the rights and benefits contained in the Master Service Agreement and that PA Austin LLC shall likewise be bound by the terms and conditions contained therein except as provided for herein.

(B) Parts Authority Southern LLC, a New York corporation with offices at 211-10 Hillside Avenue, Queens Village, NY 11427 and Diligent agree that Parts Authority Southern LLC shall be a beneficiary to the Master Client Services Agreement, dated August 30, 2010, and that Diligent shall provide Parts Authority Southern LLC with all of the rights and benefits contained in the Master Client Services Agreement and that Parts Authority Southern LLC shall likewise be bound by the terms and conditions contained therein except as provided for herein.

(C) In addition to all of the other provisions contained in the Master Client Services Agreement which shall remain in full force and effect, Diligent shall name PA Austin LLC and Parts Authority Southern LLC as separate additional insureds under the terms of the Master Client Services Agreement and shall provide proof of such insurance in the form of a certificate of insurance upon the signing of this Agreement. All other indemnifications and waivers provided by Diligent to Parts Authority Inc. shall also be

provided to PA Austin LLC and Parts Authority Southern LLC and shall remain in full force and effect to Parts Authority Inc., PA Austin LLC and Parts Authority Southern LLC.

(D) Parts Authority Inc., PA Austin LLC and Parts Authority Southern LLC, shall be referred to collectively as "Client".

CONTRACTOR'S INSURANCE AND INDEMNITY AGREEMENT

Contractor, its subcontractors and sub-subcontractors shall not commence work until it has obtained all insurance referred to herein, has provided proof as set forth, and has had it approved by Client.

Contractor, its subcontractors and sub-subcontractors shall secure, pay for and maintain the following insurance policies in full force and effect during the term of the agreement:

(1) Property Insurance upon all tools, material and equipment (owned, borrowed or leased by the Contractor or its employees) to the full replacement value thereof during the full term of this contract. This insurance shall insure against damage or loss caused by fire and all other perils covered by a standard "All Risk" insurance policy. Contractor agrees to waive its right of subrogation against Owner, owner's agent and consultants. Failure of the Contractor to secure and maintain adequate coverage shall not obligate Client or its agents or employees for any losses.

(2) Commercial General Liability Insurance written on ISO form CG00 01 10/01 with limits of $1,000,000 per occurrence, Bodily Injury and Property Damage Combined, $1,000,000 per occurrence, Personal & Advertising Injury, $1,000,000 aggregate Products and Completed Operations Liability and $2,000,000 General (per project) Aggregate. The policy shall be written on an occurrence basis with no deductible.

The policy shall not contain exclusions relating to:

(a) contractual liability
(b) independent contractors
(c) gravity related injuries
(d) injuries sustained by employee of <u>an</u> insured or <u>any</u> insured

The policy shall be endorsed to name Client as "additional insured" utilizing ISO Forms CG2010. The definition of Additional Insured shall include all Officers, Directors and Employees of the named entity, its agents and consultants. Further, the insurance policy shall provide coverage for the "additional insured" and shall apply on a primary basis irrespective of any other insurance, whether collectible or not.

(3) Automobile Liability Insurance for Bodily Injury and Property Damage in the amount of $1,000,000 combined and covering all owned, non-owned and hired vehicles. General Aggregate of $2,000,000, Products- Comp/OP AGG of 2,000,000, and a general liability of $1,000.000 per occurrence. Policy shall include Client as additional insured.

All policies (except automobile) shall allow for a Waiver of Subrogation in favor of Owner.

All policies noted above shall be written with insurance companies licensed to do business in the State of New York and rated no lower than A-8 in the most current edition of A.M. Best's Property-Casualty Key Rating Guide.

(4) EVIDENCE (NOTICES) OF COMPLIANCE

All policies shall be endorsed to provide that in the event of cancellation, non-renewal or material modification, Client shall receive thirty (30) days' prior written notice thereof.

Contractor shall furnish Client with Certificates of Insurance no later than (5) days prior to commencement of work and upon Owner's request, shall provide Client with complete copies of the aforementioned policies including all endorsements attached thereto evidencing compliance with all insurance provisions noted above.

All Certificates and policy termination notices should be delivered via certified mail to:

**Parts Authority, Inc.**
**211-10 Hillside Avenue**
**Queens Village, NY 11427**
**Attn: Keith Goldfarb**

FAILURE TO COMPLY WITH ANY OF THE REQUIREMENTS NOTED ABOVE WILL RESULT IN A BREACH OF THIS CONTRACT BY THE CONTRACTOR.

(5) Paragraph 15 of the Master Client Services Agreement is amended and modified as follows:

Diligent warrants and represents that any parties supplied by Diligent who shall perform delivery services for Client under the Master Client Services Agreement are not employees of Diligent or of Client and that they are independent owner operators. Should Client, its officers, directors, employees or assigns be the subject of any lawsuit or governmental inquiry or proceeding as a result of any claim brought by an individual, group or governmental agency challenging the status of an Owner Operator as an independent contractor and/or arising out of an alleged employer/employee relationship, then Diligent, to the fullest extent permitted by law and at its own cost and expense shall defend, indemnify and hold Client , its partners, affiliates, subsidiaries, directors, members, officers, employees, servants, representatives, consultants and agents harmless from and against any and all claims, losses, (including attorneys' fees, witnesses' fees and all court costs), damages, expense and liability (including statutory liability and penalties). Such claims that

shall be included in this addendum include but are not limited to claims arising as a result of services performed by Contractor for Client, including but not limited to claims brought under any federal, state or local statute, including but not limited to The Americans with Disabilities Act of 1990 (Titles I and V), The Civil Rights Acts of 1964 and 1991 (Title VII), The United States Code (Title 42, Chapter 21, Subchapter I, Sec. 1981), The Equal Pay Act of 1963, the New York State and City Human Rights Laws, the Age Discrimination in Employment Act, as Amended, the Family and Medical Leave Act, The DC Human Rights Act of 1977 as amended March 14, 2007, The Maryland Civil Rights Law as promulgated in Title 20 of the State Government, Annotated Code of Maryland and The Code of Maryland Regulations, the New York State and DC Labor Laws, the Fair Labor Standards Act, as well as any other claim in which an employer and employee relationship is alleged, claims for unemployment benefits and unpaid unemployment insurance premiums, claims for disability or workers' compensation benefits, claims relating to unpaid disability or workers' compensation benefits, any penalties for failure to obtain statutory insurance (including but not limited to unemployment, disability and workers' compensation), employment taxes, penalties relating to employment taxes, and other contract or tort claims; provided however, if the claim brought by an individual, group or governmental agency challenging the status of an Owner Operator as an independent contractor occurs as a result of Client or any employee of Client exercising control over the Owner Operator beyond the guidelines established by Diligent and if the exercise of that control alone creates an employee relationship between Owner Operator and Client, then in such event Contractor shall not be obligated to defend, indemnify or to hold harmless Client its partners, affiliates, subsidiaries, directors, members, officers, employees, servants, representatives, consultants and agents from and against the claim and all losses, (including attorneys' fees, witnesses' fees and all court costs), damages, expense and liability (including statutory liability).

(6) INDEMNIFICATION/HOLD HARMLESS

Paragraph 10 of the Master Client Services Agreement is amended and modified as follows.

The Contractor shall, to the fullest extent permitted by law and at its own cost and expense, defend, indemnify and hold Client, its partners, affiliates, subsidiaries, directors, members, officers, employees, servants, representatives, consultants and agents harmless from and against any and all claims, loss, (including attorneys' fees, witnesses' fees and all court costs), damages, expense and liability (including statutory liability), resulting from injury and/or death of a person involved or damage to or loss of property arising out of any negligent or wrongful act, error, omission, breach of any statue, code or rule or breach of contract, in connection with the operations of the Contractor, its subcontractors and sub-subcontractors. The foregoing indemnity shall include injury or death of any employee of the Contractor or subcontractor and shall not be limited in any way by an amount or type of damages, compensation or benefits payable under any applicable Workers' Compensation, Disability Benefits or other similar employee benefits acts, if not found in negligence on the part of the Client. This clause shall survive the expiration or termination of this contract and the work.

(7) INDEPENDENT CONTRACTOR PROVISIONS

Diligent and Client and owner operators supplied by Diligent are and shall be independent contractors in their relationship with each other and neither is nor shall be considered an agent, employee, or legal representative of the other for federal or state tax purposes or for any other purposes whatsoever. Diligent and owner operators supplied by Diligent have no express or implied authority to assume or create any obligation or responsibility on behalf of Client or to bind Client in any way. Owner operators supplied by Diligent shall be entitled to provide services for others during the same time that they perform services for Company, so long as they and Diligent abide by the provisions of Paragraph _____ above. Diligent and the owner operators supplied by Diligent acknowledge that as an independent contractor, Diligent and the owner operators shall not be entitled to receive any insurance coverage or other fringe benefits that Client customarily provides to its employees, and that no withholding, FICA or other taxes will be paid or withheld by Client on the owner operators' behalf. As independent contractors, owner operators supplied by Diligent shall not be entitled to disability, workers' compensation or unemployment insurance coverage or benefits from the Client. Diligent agrees to indemnify, defend and hold Client and its officers, employees and members harmless from and against all claims, damages, or liabilities as a result of its breach of this Paragraph. Diligent further agrees to provide acknowledgements from all owner operators supplied by Diligent that each agrees to the provisions of this paragraph and Diligent indemnifies Client therefore.

F. This Section shall survive the termination of this Agreement.

By: [signature]
Diligent Delivery Systems
Scott E Brucker Chief Sales Officer
Name, Title

Date: 10/13/2011

By: [signature]
Client
David Wotman CFO
Name, Title

Date: 10/13/11

# MASTER CLIENT SERVICES AGREEMENT ADDENDUM

**WHEREAS**, Diligent Delivery Systems Inc.("Diligent" or "Contractor") and Parts Authority Inc. entered into a Master Client Services Agreement on or about the 30th day of August, 2010, in which Diligent agreed to provide logistics delivery services to Parts Authority Inc.

**WHEREAS,** Diligent remains under obligation to provide proof of insurance and to maintain such insurance coverage in and for the benefit of client for the time frame covered under the existing Master Client Services Agreement.

**WHEREAS,** Diligent remains under obligation to indemnify and hold harmless Parts Authority Inc. and its affiliates, officers, directors, employees and agents pursuant to the terms of the existing Master Client Services Agreement.

**WHEREAS,** both Diligent and Parts Authority Inc. and its affiliates are desirous of increasing the number of independent contractor owner/operator drivers supplied by Diligent under the Master Client Services Agreement.

**WHEREAS,** any such modification to the Master Client Services Agreement must be in writing.

**IT IS HERETOFORE AGREED,** the Master Client Services Agreement is modified solely to the extent described herein and that all other terms and conditions of the Master Client Services Agreement shall remain in full force and effect except to those terms and conditions specifically modified or added herein.

(A) Parts Authority Arizona, LLC, an Arizona corporation with offices at 2550 North Scottsdale Road, Tempe, AZ 85281 and Diligent agree that Parts Authority Arizona, LLC shall be a beneficiary to the Master Service Agreement dated August 30th 2010 and that Diligent shall provide Parts Authority Arizona, LLC with all of the rights and benefits contained in the Master Service Agreement and that Parts Authority Arizona, LLC shall likewise be bound by the terms and conditions contained therein except as provided for herein.

(B) Arizona Logistics Inc. d/b/a Diligent Arizona is added as a Contractor to this agreement in addition to Diligent Delivery Systems, Inc., and all rights, obligations, liabilities, indemnifications, terms and conditions as more fully set forth herein and in the Master Agreement dated the 30th day of August 2010 shall apply with the same force and effect to Arizona Logistics Inc., d/b/a Diligent Arizona.

(C) Parts Authority Arizona, LLC an Arizona corporation with offices at 2550 North Scottsdale Road, Tempe, AZ 85281 and Diligent agree that Parts Authority Arizona, LLC shall be a beneficiary to the Master Client Services Agreement, dated August 30, 2010, and that Diligent shall provide Parts Authority Arizona, LLC with all of the rights and benefits contained in the Master Client Services Agreement and that Parts Authority Arizona, LLC shall likewise be bound by the terms and conditions contained therein except as provided for herein.

(D) In addition to all of the other provisions contained in the Master Client Services Agreement which shall remain in full force and effect, Diligent shall name Parts Authority Arizona, LLC as separate additional insureds under the terms of the Master Client Services Agreement and shall provide proof of such insurance in the form of a certificate of insurance upon the signing of this Agreement. All other indemnifications and waivers provided by Diligent to Parts Authority Inc. shall also be provided to Parts Authority Arizona, LLC and shall remain in full force and effect to Parts Authority Inc., Parts Authority Arizona, LLC.

(E) Parts Authority Inc., Parts Authority Arizona, LLC and shall be referred to collectively as "Client".

CONTRACTOR'S INSURANCE AND INDEMNITY AGREEMENT

Contractor, its subcontractors and sub-subcontractors shall not commence work until it has obtained all insurance referred to herein, has provided proof as set forth, and has had it approved by Client.

Contractor, its subcontractors and sub-subcontractors shall secure, pay for and maintain the following insurance policies in full force and effect during the term of the agreement:

(1) Property Insurance upon all tools, material and equipment (owned, borrowed or leased by the Contractor or its employees) to the full replacement value thereof during the full term of this contract. This insurance shall insure against damage or loss caused by fire and all other perils covered by a standard "All Risk" insurance policy. Contractor agrees to waive its right of subrogation against Owner, owner's agent and consultants. Failure of the Contractor to secure and maintain adequate coverage shall not obligate Client or its agents or employees for any losses.

(2) Commercial General Liability Insurance written on ISO form CG00 01 10/01 with limits of $1,000,000 per occurrence, Bodily Injury and Property Damage Combined, $1,000,000 per occurrence, Personal & Advertising Injury, $1,000,000 aggregate Products and Completed Operations Liability and $2,000,000 General (per project) Aggregate. The policy shall be written on an occurrence basis with no deductible.

The policy shall not contain exclusions relating to:

(a) contractual liability
(b) independent contractors
(c) gravity related injuries
(d) injuries sustained by employee of <u>an</u> insured or <u>any</u> insured

The policy shall be endorsed to name Client as "additional insured" utilizing ISO Forms CG2010. The definition of Additional Insured shall include all Officers, Directors and Employees of the named entity, its agents and consultants. Further, the insurance policy

shall provide coverage for the "additional insured" and shall apply on a primary basis irrespective of any other insurance, whether collectible or not.

(3) Automobile Liability Insurance for Bodily Injury and Property Damage in the amount of $1,000,000 combined and covering all owned, non-owned and hired vehicles. General Aggregate of $2,000,000, Products- Comp/OP AGG of 2,000,000, and a general liability of $1,000.000 per occurrence. Policy shall include Client as additional insured.

All policies (except automobile) shall allow for a Waiver of Subrogation in favor of Owner.

All policies noted above shall be written with insurance companies licensed to do business in the State of New York and rated no lower than A-8 in the most current edition of A.M. Best's Property-Casualty Key Rating Guide.

(4) EVIDENCE (NOTICES) OF COMPLIANCE

All policies shall be endorsed to provide that in the event of cancellation, non-renewal or material modification, Client shall receive thirty (30) days' prior written notice thereof.

Contractor shall furnish Client with Certificates of Insurance no later than (5) days prior to commencement of work and upon Owner's request, shall provide Client with complete copies of the aforementioned policies including all endorsements attached thereto evidencing compliance with all insurance provisions noted above.

All Certificates and policy termination notices should be delivered via certified mail to:

**Parts Authority, Inc.**
**211-10 Hillside Avenue**
**Queens Village, NY 11427**
**Attn: Keith Goldfarb**

FAILURE TO COMPLY WITH ANY OF THE REQUIREMENTS NOTED ABOVE WILL RESULT IN A BREACH OF THIS CONTRACT BY THE CONTRACTOR.

(5) Paragraph 15 of the Master Client Services Agreement is amended and modified as follows:

Diligent warrants and represents that any parties supplied by Diligent who shall perform delivery services for Client under the Master Client Services Agreement are not employees of Diligent or of Client and that they are independent owner operators. Should Client, its officers, directors, employees or assigns be the subject of any lawsuit or governmental inquiry or proceeding as a result of any claim brought by an individual, group or

governmental agency challenging the status of an Owner Operator as an independent contractor and/or arising out of an alleged employer/employee relationship, then Diligent, to the fullest extent permitted by law and at its own cost and expense shall defend, indemnify and hold Client , its partners, affiliates, subsidiaries, directors, members, officers, employees, servants, representatives, consultants and agents harmless from and against any and all claims, losses, (including attorneys' fees, witnesses' fees and all court costs), damages, expense and liability (including statutory liability and penalties). Such claims that shall be included in this addendum include but are not limited to claims arising as a result of services performed by Contractor for Client, including but not limited to claims brought under any federal, state or local statute, including but not limited to The Americans with Disabilities Act of 1990 (Titles I and V), The Civil Rights Acts of 1964 and 1991 (Title VII), The United States Code (Title 42, Chapter 21, Subchapter 1, Sec. 1981), The Equal Pay Act of 1963, Arizona State and City Human Rights Laws, the Age Discrimination in Employment Act, as Amended, the Family and Medical Leave Act, The DC Human Rights Act of 1977 as amended March 14, 2007, the Arizona Civil Rights Act, The Arizonans with disabilities Act, Arizona Labor Laws, the Fair Labor Standards Act, as well as any other claim in which an employer and employee relationship is alleged, claims for unemployment benefits and unpaid unemployment insurance premiums, claims for disability or workers' compensation benefits, claims relating to unpaid disability or workers' compensation benefits, any penalties for failure to obtain statutory insurance (including but not limited to unemployment, disability and workers' compensation), employment taxes, penalties relating to employment taxes, and other contract or tort claims; provided however, if the claim brought by an individual, group or governmental agency challenging the status of an Owner Operator as an independent contractor occurs as a result of Client or any employee of Client exercising control over the Owner Operator beyond the guidelines established by Diligent and if the exercise of that control alone creates an employee relationship between Owner Operator and Client, then in such event Contractor shall not be obligated to defend, indemnify or to hold harmless Client its partners, affiliates, subsidiaries, directors, members, officers, employees, servants, representatives, consultants and agents from and against the claim and all losses, (including attorneys' fees, witnesses' fees and all court costs), damages, expense and liability (including statutory liability).

(6) INDEMNIFICATION/HOLD HARMLESS

Paragraph 10 of the Master Client Services Agreement is amended and modified as follows.

The Contractor shall, to the fullest extent permitted by law and at its own cost and expense, defend, indemnify and hold Client, its partners, affiliates, subsidiaries, directors, members, officers, employees, servants, representatives, consultants and agents harmless from and against any and all claims, loss, (including attorneys' fees, witnesses' fees and all court costs), damages, expense and liability (including statutory liability), resulting from injury and/or death of a person involved or damage to or loss of property arising out of any negligent or wrongful act, error, omission, breach of any statue, code or rule or breach of contract, in connection with the operations of the Contractor, its subcontractors and sub-subcontractors. The foregoing indemnity shall include injury or death of any employee of

the Contractor or subcontractor and shall not be limited in any way by an amount or type of damages, compensation or benefits payable under any applicable Workers' Compensation, Disability Benefits or other similar employee benefits acts, if not found in negligence on the part of the Client. This clause shall survive the expiration or termination of this contract and the work.

(7) INDEPENDENT CONTRACTOR PROVISIONS

Diligent and Client and owner operators supplied by Diligent are and shall be independent contractors in their relationship with each other and neither is nor shall be considered an agent, employee, or legal representative of the other for federal or state tax purposes or for any other purposes whatsoever. Diligent and owner operators supplied by Diligent have no express or implied authority to assume or create any obligation or responsibility on behalf of Client or to bind Client in any way. Owner operators supplied by Diligent shall be entitled to provide services for others during the same time that they perform services for Company, so long as they and Diligent abide by the provisions of Paragraph 15 above. Diligent and the owner operators supplied by Diligent acknowledge that as an independent contractor, Diligent and the owner operators shall not be entitled to receive any insurance coverage or other fringe benefits that Client customarily provides to its employees, and that no withholding, FICA or other taxes will be paid or withheld by Client on the owner operators' behalf. As independent contractors, owner operators supplied by Diligent shall not be entitled to disability, workers' compensation or unemployment insurance coverage or benefits from the Client. Diligent agrees to indemnify, defend and hold Client and its officers, employees and members harmless from and against all claims, damages, or liabilities as a result of its breach of this Paragraph. Diligent further agrees to provide acknowledgements from all owner operators supplied by Diligent that each agrees to the provisions of this paragraph and Diligent indemnifies Client therefore.

F. This Section shall survive the termination of this Agreement.

| | | | |
|---|---|---|---|
| By: | [signature] Diligent Delivery Systems | By: | [signature] Client |
| | Scott Bruder Chief Sales Officer Name, Title | | David Wotruba, CFO Name, Title |
| Date: | 3/12/2012 | Date: | 3/12/12 |

| Store | Store Address |
|---|---|
| 40 | 2550 North Scottsdale Road, Tempe, AZ, 85281 |
| 41 | 1505 West Baseline Road, Tempe, AZ, 85283 |
| 42 | 7220 East Main Street, Mesa, AZ, 85207 |
| 43 | 1104 West Guadalupe Road, Mesa, AZ, 85210 |
| 44 | 2215 West Fillmore Street, Phoenix, AZ, 85009 |
| 45 | 15230 North 32nd Street, Phoenix, AZ, 85032 |
| 46 | 9700 North 91st Ave Suite 126, Peoria, AZ, 85345 |
| 47 | 500 South Country Club Drive, Mesa, AZ 85210 |
| 48 | 12418 North 28th Drive, Phoenix, AZ 85029 |
| 49 | 5030 North 27th Avenue, Phoenix, AZ 85017 |
| 50 | 13128 W. Foxfire Rd Unit #106, Surprise, AZ 85374 |