**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Secretary of Labor, United States Department of Labor, | No. CV-16-04499-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Logistics Incorporated, et al., | |
| Defendants. | |

Before the Court is Plaintiff's Motion to Exclude Defendants' Untimely Second Expert Report Under Rule 37(c). (Doc. 245.) At dispute is a supplemental opinion offered by Defendants' vehicle expense expert, Dr. White, made in a declaration in support of Defendants' opposition to Plaintiff's motion for summary judgment. Plaintiff contends that the timing of the disclosure violates the discovery deadlines, is not substantially justified, and is not harmless. Fed. R. Civ. P. 37(c)(1). The motion is fully briefed and for the reasons set forth herein is denied.

The final Court-scheduled deadline for disclosing experts and their opinions was June 15, 2018. The deadline for taking expert depositions was June 15, 2018. Plaintiff's investigator, Espinoza[1], was deposed on May 3, 2020, about her opinions of Drivers'

---

[1] Although much of Espinoza's testimony involves her summary of facts about drivers gathered during her investigation, her opinions estimating vehicle expenses is not a summary to prove content as allowed by Fed. R. Evid. 1006, nor is it a lay opinion allowed by Rule 701. It is an expert opinion.

vehicle expenses, such as wear and tear and gas, utilizing the IRS mileage deduction. Defendant's expert, Dr. White, listened to the deposition by phone. During the deposition, Espinoza was questioned about and explained her use of the IRS mileage deduction. She testified:

> Q. Okay. And explain to me how you got 55 cents a mile as the mileage? By the way, this is the IRS standard mileage deduction of 55 cents a mile?
>
> A. Yes.
>
> Q. And can you explain to me how you came up with 55 cents a mile across all the years 2012 to 2018?
>
> A. Uh-huh. I went onto the IRS website, found out what the IRS reimbursement rate was for each year 2012, 2013, so on. And then averaged it across the board.
>
> Q. Do you know what the IRS mileage deduction compensates for?
>
> A. Like what is it for?
>
> Q. Right.
>
> A. Yeah. It encompasses all wear and tear on a vehicle, damages that might incur because you're using your own vehicle, mileage, gas. I believe that's the majority of it.
>
> Q. So it encompasses wear and tear on a vehicle like depreciation?
>
> A. Correct.
>
> Q. Are you aware that the IRS mileage deduction only applies for individuals who actually own the vehicle? Is that a factor that's weighed -- let me ask you this way. If a driver does not own the vehicle that they're driving and instead leases it or borrows it from somebody else, is it still proper in the Department's view to use the IRS mileage deduction?
>
> A. Yes.
>
> Q. Why?
>
> A. Because they were still out that gas money. They still had -- they still -- I mean, if the driver did something to that vehicle, I'm sure they had to pay for it. I honestly doubt a leased vehicle would have been used. The miles would have been too high.
>
> Q. If one of these drivers as an independent contractor took a mileage deduction on their taxes for a period of time that they were working with Diligent, is it still appropriate in the

1
2
3
4
5
6
7
8
9
10
11
12

> Department's view to use the IRS mileage deduction?
>
> MR. ORLOV: Objection. Calls for a legal conclusion. Form. If you know, answer.
>
> THE WITNESS: Yeah, I was actually just going to say that would have been left [open] for the solicitor to decide.
>
> Q. (By Mr. Morrison) You may not be able to answer this, but is it the Department's position that the IRS mileage deduction is the -- the IRS mileage deduction of 55 cents a mile is the only reasonable mileage rate to compensate these drivers for?
>
> MR. ORLOV: I think that's an issue for litigation. Asks for a legal conclusion.
>
> THE WITNESS: Do I still answer it?
>
> MR. MORRISON: I'll just withdraw that question.
>
> Q. (By Mr. Morrison) So there are situations in this back pay spreadsheet, Deposition Exhibit 70, where the effect of the IRS mileage deduction, column K, essentially eats up all of the earnings that somebody earned in column D; correct?

In her May 3, 2020, deposition, Espinoza explained how and why she used the IRS mileage deduction in her estimates. Defendants were on notice of her use of the IRS mileage deduction at least as early as May 3, 2020. When White's report was disclosed on May 14, 2020, it pointed out Plaintiff's use of the IRS mileage rate but did not disclose opinions addressing or rebutting the propriety of Espinoza's use of it.

The record shows that the first disclosure of White's opinions rebutting Espinoza's use of the deduction was in his affidavit filed in response to Plaintiff's motion for summary judgment on August 25, 2020. The timing of that disclosure prevented Plaintiff from having the chance before the briefing to explore with White his opinions disputing Espinoza's use the IRS mileage rate.

The Court's scheduling orders (Doc. 29 and 57) provided for staggered expert disclosures to allow Defendants' experts the opportunity to have full knowledge of Plaintiff's expert's opinions and time to address and rebut those opinions. Although Espinoza should have been disclosed as an expert, Defendants recognized that, at least some of her opinions, were expert opinions. (Doc. 239.) Whether Plaintiff considered Espinoza to be an expert, Defendants deposed Espinoza before the Plaintiff's expert

1  disclosure deadline.  Defendants were on notice that she was offering expert opinions and
2  had the opportunity to explore her opinions, the facts and data considered in forming them,
3  Espinoza's qualifications, any exhibits she will use to summarize her opinions, and her
4  compensation—in other words, all the information required by Rule 26(a)(2) disclosure.

5  The parties apparently agreed to set disclosure deadlines beyond the Court's
6  scheduling order.  Under that scenario, the applicable deadline for White's disclosure is
7  controlled by Rule 26(a)(2)(D)(ii).  That rule provides that the disclosure of "evidence
8  [that] is intended solely to contradict or rebut evidence on the same subject matter indented
9  by another party under Rule 26(a)(2)(B) or (C), [must be made] within 30 days after the
10  other party's disclosure."  The disclosure of White's opinions for the first time in
11  opposition to a motion for summary judgment, more than three months after the disclosure
12  of Espinoza's opinions, and more than three months after the disclosure of White's report,
13  is too late.

14  Defendants' use of a declaration of a non-disclosed expert opinion in opposition to
15  a motion for summary judgment violates the intention of the Court's scheduling orders,
16  Rule 26(a) and the long-standing and well-established principle of discovery that surprise
17  is not allowed.  The purpose of discovery is to allow all parties equal access to relevant
18  information.  "Mutual knowledge of all the relevant facts gathered by both parties is
19  essential to proper litigation."  *Hickman v. Taylor,* 329 U.S. 495, 507 (1947).  "[T]he
20  purpose of discovery is to remove surprise from trial preparation[.]"  *Oakes v. Halverson*
21  *Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).

22  The last question to be decided is whether the late disclosure was harmless.  Fed. R.
23  Civ. P. 37(c)(1).  In its reply in support of its motion for partial summary judgment, Plaintiff
24  admits that the dispute over the appropriate reimbursement rate is immaterial to the
25  outcome of the motion.  (Doc. 241 at 18.)  That being the case, the portion of the White
26  declaration addressing that issue is also immaterial and therefore the late disclosure is
27  harmless.

28  The question left unanswered is whether the use of the subject White opinion at trial

is harmless. One factor the Court considers when making a Rule 37(c)(1) harmless determination is whether Plaintiff can explore the opinion and its basis in deposition or by other means outside the expert report. The Court finds good cause to open discovery for the White deposition. Indeed, the Court's prior orders already contemplated that Drivers who would be called by Plaintiff as trial witnesses would be disclosed 75 days before trial so that Defendants could depose them. Adding White to the list of witnesses to be deposed after dispositive motions but before trial will not represent a significant expansion of discovery. By allowing the deposition, however, the Court is not opening the door for White to offer additional opinions. His opinions are limited to those in his report and the declaration submitted in the context of Plaintiff's motion for partial summary judgment. Because Plaintiff will be permitted to explore these late disclosures with White before trial, the use of his opinion at trial will be harmless.

**IT IS ORDERED** that Plaintiff's Motion to Exclude Defendant's Untimely Second Expert Report Under Rule 37(c) (Doc. 245) is **DENIED**.

Dated this 31st day of January, 2022.

Douglas L. Rayes
United States District Judge